UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **2:22-cv-05097-AB-SHK** | Date: | November 9, 2023 |
| Title: | ***Seoul Semiconductor Co., Ltd., et al. v. FEIT Electric Co., Inc.*** | | |

Present: The Honorable Shashi H. Kewalramani, United States Magistrate Judge

| | |
|---|---|
| D. Castellanos | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings (IN CHAMBERS): ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DEFENDANT'S RESPONSES TO INTERROGATORIES 1-4, 7, 9, 11 AND 14 [ECF Nos. 79, 82, 83]**

On May 5, 2023, Seoul Semiconductor Co., Ltd. and Seoul Viosys Co. ("SSC" or "Plaintiffs") filed a Notice of Motion and Motion to Compel FEIT Electric Co., Inc.'s ("Feit" or "Defendant") Responses to Interrogatories 1-4, 7, 9, 11 and 14 ("Motion to Compel" or "MTC"). Electronic Case Filing Number ("ECF No.") 79, MTC. Along with the Motion to Compel, the parties submitted a Joint Stipulation Re: Plaintiffs' Motion to Compel ("Joint Stipulation" or "Joint Stip."). ECF No. 79-1, Joint Stip. On May 23, 2023, Defendant filed a Supplemental Memorandum in Opposition to the Motion to Compel ("Supplemental Opposition" or "Supp. Opp'n"). ECF No. 82, Supp. Opp'n. The same day, Plaintiffs filed a Supplemental Brief to the Motion to Compel ("Supplemental Brief" or "Supp. to MTC"). ECF No. 83, Supp. to MTC.

After reviewing the parties' arguments, for the reasons set forth in this Order, the Court **DENIES** Plaintiffs' Motion to Compel.

## I. BACKGROUND

### A. <u>Procedural History</u>

On July 22, 2022, Plaintiffs filed a Complaint ("Complaint" or "Compl."), a Report on the Filing of an Action Regarding a Patent or Trademark, a Request for Clerk to Issue Summons on Complaint, a Civil Cover Sheet, and a Corporate Disclosure Statement and Notice of Interested Parties. ECF Nos. 1-5. On August 15, 2022, Defendant filed a Joint Stipulation for

Extension of Time to File Answer re Complaint, which the Court granted on August 17, 2022. ECF Nos. 21, 22.

On October 3, 2022, Defendant filed a Notice of Moton and Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss" or "MTD"). ECF No. 23, MTD. On October 21, 2022, Plaintiffs filed an Opposition to the Motion to Dismiss, and on October 28, 2022, Defendant filed a Reply in Support of the Motion to Dismiss. ECF Nos. 30, 31. On November 30, 2022, the Court entered an Order Granting Defendant's Motion to Dismiss Claims of Willful Infringement. ECF No. 45.

On December 21, 2022, Plaintiffs filed a First Amended Complaint ("FAC"), in which Plaintiffs allege that Defendant made, used, or sold LED lights that infringe the 9,716,210 (the "'210 Patent"), 7,667,225 (the "'225 Patent"), 9,799,800 (the "'800 Patent"), 9,929,314 (the "'314 Patent"), 9,577,157 (the "'157 Patent"), 10,217,912 (the "'912 Patent"), 10,916,684 (the "'684 Patent"), 7,906,789 (the "'789 Patent"), 10,134,967 (the "'967 Patent'), 10,510,933 (the "'933 Patent"), 9,627,435 (the "'435 Patent"), and 8,716,946 (the "'946 Patent") (collectively the "Asserted Patents"). ECF No. 49, FAC. On December 30, 2022, the parties filed a Joint Report Rule 26(f) Discovery Plan. ECF No. 52. On January 12, 2023, Defendant filed a Notice of Motion and Motion to Dismiss Willful Infringement Claims ("Second Motion to Dismiss" or "Second MTD"). ECF No. 56, Second MTD. On January 20, 2023, Plaintiffs filed an Opposition to the Second Motion to Dismiss, and on January 27, 2023, Defendant filed a Reply in Support of the Second Motion to Dismiss. ECF Nos. 57, 59. On February 8, 2023, the Court entered an Order Denying in Part and Granting in Part Defendant's Second Motion to Dismiss, dismissing the willfulness claims with respect to the '435, '684, and '946 patents, without prejudice, but allowing the willfulness claims with respect to the '210, '912, and '157 Patents to go forward. ECF No. 65 at 3, 4. On February 22, 2023, Defendant filed an Answer to the FAC ("Answer"). ECF No. 70, Answer.

On February 2, 2023, the Court entered an Order/Referral to Alternative Dispute Resolution Procedure No. 3. ECF No. 61. The same day, the Court entered an Order Re: Jury /Court Trial setting, inter alia, February 4, 2025 as the jury trial date and May 28, 2024 as the non-expert discovery cut-off date, ECF No. 62, and an Order Setting Patent Schedule, ECF No. 63. At the request of the parties, the Court held informal discovery dispute conferences on February 14, 2023 and February 16, 2023. See ECF Nos. 66, 71. On March 17, 2023, the parties filed a Joint Stipulation for Protective Order, ECF No. 77, and the Court entered a Protective Order ("Protective Order") on March 21, 2023, ECF No. 78, Protective Order.

On May 5, 2023, Plaintiffs filed the Motion to Compel and the parties filed their Joint Stipulation. ECF Nos. 79, 79-1. On May 23, 2023, Defendant filed its Opposition and Plaintiffs filed their Supplement. ECF Nos. 82, 83. The same day, the Court issued a Scheduling Notice for a motion hearing regarding the Motion to Compel, which was held on June 6, 2023. See ECF No. 81. Finally, Defendant filed a Notice of Motion and Motion to Strike Infringement Contentions ("Motion to Strike") on May 19, 2023, and after being granted an extension of time, Plaintiffs filed an Opposition to the Motion to Strike on June 2, 2023. See ECF Nos. 80, 84-86. Subsequently, on July 18, 2023, the Court issued an order Granting in Part Defendant's Motion

to Strike Infringement Contentions. ECF No. 90. On August 25, 2023, Defendant filed a Motion to Strike Plaintiffs' Supplemental and Amended Infringement Contentions. ECF No. 93. On September 18, 2023, Plaintiffs filed a Joint Statement Pursuant to Court's July 18, 2023 Order, ECF No. 101, and its Opposition to the Motion to Strike Plaintiffs' Supplemental and Amended Infringement Contentions, ECF No. 102. Finally, on October 20, 2023, the parties filed a Joint Motion to Modify Order Setting Patent Schedule, ECF No. 115, which did not impact the discovery deadlines in this case. The Court signed the stipulated order modifying the patent schedule on October 25, 2023. ECF No. 116.

### B. The Disputed Discovery

At issue are Plaintiffs' Interrogatories 1-4, 7, 9, 11, and 14 (the "Interrogatories"). The Interrogatories, and Defendant's responses/objections to them, are as follows.

**INTERROGATORY NO. 1:**

Identify by both supplier and/or manufacturer designation (including an identification of that supplier and/or manufacturer) and your own designation, (including but not limited to model numbers, serial numbers, and other designations in use in your ordinary course of business) each LED Lighting Product that you have sold, offered for sale, used or imported into the United States since 2016, including the first and, if applicable, last date each LED Lighting Product was sold, offered for sale, used or imported into the United States, and identify the three persons most knowledgeable about the facts underlying your answer, and any supporting documents concerning the information sought in this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 1:**

Feit Electric hereby incorporates by reference its General Objections described above. In addition to and without waiving the foregoing General Objections, Feit Electric objects to this Interrogatory as overly broad and unduly burdensome because it requests identification of, "by both supplier and/or manufacturer designation . . . and your own designation," "each LED Lighting Product" sold, offered for sale, used or imported into the United States since 2016 by Feit Electric, etc. Specifically, Feit Electric objects to the term "each LED Lighting Product" as vague, overbroad and premature, for it refers to products that have yet to be identified and enumerated. Rather, it refers to "any product that uses an LED for illumination," regardless of whether the product has any significance to the products, parties, or claims involved in this action. This term seeks information that is not relevant to the subject matter of this action, and thus the burden of production outweighs SSC's need for the information sought. The term also renders it impossible for Feit Electric to prepare a response to this Interrogatory, as it potentially seeks to cover Feit Electric's entire offering of products containing LEDs. Feit Electric will not speculate to the meaning ascribed to such terms. Feit Electric also objects to this Interrogatory as overly

broad, vague, and ambiguous to the extent it is not limited to a relevant time period and scope. For instance, the Interrogatory seeks information from as far back as 2016 and SSC has failed to provide lot numbers for the products for which it seeks identification. Feit Electric further objects to this Interrogatory to the extent that it seeks confidential, trade secret, or proprietary business, technical, marketing, financial information, or documents potentially covered by a third-party confidentiality agreement.

Furthermore, Feit Electric objects to this Interrogatory as it contains a multitude of discrete subparts, which count against the 25 per party limit as stated in Federal Rule of Civil Procedure 33(a)(1). Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."); SPH Am., LLC v. Research in Mot., Ltd., 13cv2320 CAB (KSC), 2016 WL 6305414, at *2 (S.D. Cal. Aug. 16, 2016) (holding that plaintiff's interrogatory had multiple subparts, which sought the factual basis supporting each validity contention, the identity of the individuals who had knowledge of those facts, and the identity of the documents that supported the validity contentions); Super. Commc'ns v. Earhugger, Inc., 257 F.R.D. 215, 218 (C.D. Cal. 2009) (finding interrogatory had multiple subparts that requested facts; persons; and documents relating to defendant's answer to complaint). Specifically, this Interrogatory seeks identification of more than 25 Feit Electric products. This Interrogatory further seeks several categories of distinct information, at least five, including designations and dates relating to each product, persons most knowledgeable about the facts underlying Feit Electric's response to this Interrogatory, and any supporting documents concerning the information sought therein. Thus, this Interrogatory alone accounts for more than 25 interrogatories.

Subject to its General and Specific Objections, and pursuant to correspondence with SSC's counsel dated January 5, 2023, Feit Electric identifies Aaron Feit, Alan Feit and Anu Singh as persons knowledgeable regarding the information sought in this Interrogatory.

**INTERROGATORY NO. 2:**

For each LED Lighting Product made, sold, imported, or offered for sale, by Feit, identify all components in the LED Lighting Product, including any LED Components, by both supplier and/or manufacturer designation, including an identification of that supplier and/or manufacturer, and your own designation, (including but not limited to model numbers, serial numbers, and other designations in use in your ordinary course of business), and identify the three

persons most knowledgeable about the facts underlying your answer, and any supporting documents concerning the information sought in this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 2:**

[General Objections.] Specifically, Feit Electric objects to the terms "each LED Lighting Product" and "any LED Components" as vague, overbroad and premature, for they refer to products that have yet to be identified and enumerated. Rather, they refer to "any product that uses an LED for illumination," regardless of whether the product has any significance to the products, parties, or claims involved in this action. These terms seek information that is not relevant to the subject matter of this action, and thus the burden of production outweighs SSC's need for the information sought. These terms also render it impossible for Feit Electric to prepare a response to this Interrogatory, as they potentially seek to cover Feit Electric's entire offering of products containing LEDs. Feit Electric will not speculate to the meaning ascribed to such terms. Feit Electric also objects to this Interrogatory as overly broad, vague, and ambiguous to the extent it is not limited to a relevant time period and scope. For instance, the Interrogatory has no limit as to time period and SSC has failed to provide lot numbers for the products for which it seeks identification. Feit Electric further objects to this Interrogatory to the extent that it seeks confidential, trade secret, or proprietary business, technical, marketing, financial information, or documents potentially covered by a third-party confidentiality agreement.

Additionally, Feit Electric objects to this Interrogatory because Feit Electric does not itself research, design, develop, engineer, specify in detail beyond performance objectives and aesthetics, manufacture, offer to sell independent of a finished lighting product, and/or sell independent of finished lighting product LEDs. Rather, Feit Electric purchases such components "off the shelf" from a variety of third-party suppliers in arms-length transactions. Feit Electric therefore does not create, receive, retain, or otherwise have custody or control of technical information related to the LEDs it has purchased.

Furthermore, Feit Electric objects to this Interrogatory as it contains a multitude of discrete subparts, which count against the 25 per party limit as stated in Federal Rule of Civil Procedure 33(a)(1). . . . Specifically, this Interrogatory seeks identification of more than 25 Feit Electric products. This Interrogatory further seeks several categories of distinct information, at least six, including persons most knowledgeable about the facts underlying Feit Electric's response to this Interrogatory and any supporting documents concerning the information sought therein. Thus, this Interrogatory alone accounts for more than 25 interrogatories.

Subject to its General and Specific Objections, and pursuant to correspondence with SSC's counsel dated January 5, 2023, Feit Electric responds to this Interrogatory as follows: Feit Electric generally does not select, specify in

detail, or otherwise track LEDs or similar components used in the products it sells.

**INTERROGATORY NO. 3:**

For each LED Lighting Product made, sold, imported, or offered for sale, by Feit: (a) identify all manufacturers of the LED Lighting Product; (b) identify all printed circuit board ("PCB") components (identified by both supplier and/or manufacturer designation) incorporated in the LED Lighting Product; (c) identify all LED Components incorporated in the LED Lighting Product; (d) identify whether any LED Components are sourced from the same party that provides the PCB components; and (e) identify the three persons most knowledgeable about the facts underlying your answer, and any supporting documents concerning the information sought in this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 3:**

[General Objections.] Specifically, Feit Electric objects to the terms "all manufacturers," "all printed circuit board ('PCB') components," and "all LED Components," to the extent they seek information that is not relevant to the subject matter of this action, and thus the burden of responding outweighs SSC's need for the information sought. Feit Electric also objects to the terms "each LED Lighting Product" and "all LED Components" as vague, overbroad and premature, for they refer to products that have yet to be identified and enumerated. Rather, they refer to "any product that uses an LED for illumination," regardless of whether the product has any significance to the products, parties, or claims involved in this action. These terms seek information that is not relevant to the subject matter of this action, and thus the burden of production outweighs SSC's need for the information sought. These terms also render it impossible for Feit Electric to prepare a response to this Interrogatory, as they potentially seek to cover Feit Electric's entire offering of products containing LEDs. Feit Electric will not speculate to the meaning ascribed to such terms. Feit Electric further objects to this Interrogatory as overly broad, vague, and ambiguous to the extent it is not limited to a relevant time period and scope. For instance, the Interrogatory has no limit as to time period and SSC has failed to provide lot numbers for the products for which it seeks identification. Also, Feit Electric objects to the Interrogatory to the extent that it seeks confidential, trade secret, or proprietary business, technical, marketing, financial information, or documents potentially covered by a third-party confidentiality agreement.

Additionally, Feit Electric objects to this Interrogatory because Feit Electric does not itself research, design, develop, engineer, specify in detail beyond performance objectives and aesthetics, manufacture, offer to sell independent of a finished lighting product, and/or sell independent of finished lighting product LEDs. Rather, Feit Electric purchases such components "off the shelf" from a variety of third-party suppliers in arms-length transactions. Feit

Electric therefore does not create, receive, retain, or otherwise have custody or control of technical information related to the LEDs it has purchased.

Furthermore, Feit Electric objects to this Interrogatory as it contains a multitude of discrete subparts, which count against the 25 per party limit as stated in Federal Rule of Civil Procedure 33(a)(1). . . . Specifically, this Interrogatory seeks identification of more than 25 Feit Electric products. This Interrogatory further seeks several categories of distinct information, at least six, including persons most knowledgeable about the facts underlying Feit Electric's response to this Interrogatory and any supporting documents concerning the information sought therein. Thus, this Interrogatory alone accounts for more than 25 interrogatories.

**INTERROGATORY NO. 4:**

For each LED Component incorporated in an Accused Product, identify (including but not limited to model numbers, serial numbers, and other designations in use in your ordinary course of business) all LED Lighting Products made, sold, or offered for sale, by Feit incorporating the same or functionally or structurally similar LED Components.

**RESPONSE TO INTERROGATORY NO. 4:**

[General Objections.] Specifically, Feit Electric objects to the terms "all LED Lighting Product," "LED Components," and "Accused Product" as vague, overbroad and premature, for they refer to products that have yet to be identified and enumerated. Rather, they refer to "any product that uses an LED for illumination," regardless of whether the product has any significance to the products, parties, or claims involved in this action. These terms seek information that is not relevant to the subject matter of this action, and thus the burden of production outweighs SSC's need for the information sought. These terms also render it impossible for Feit Electric to prepare a response to this Interrogatory, as they potentially seek to cover Feit Electric's entire offering of products containing LEDs. Feit Electric will not speculate to the meaning ascribed to such terms. Feit Electric further objects to this Interrogatory as overly broad, vague, and ambiguous to the extent it is not limited to a relevant time period and scope. For instance, the Interrogatory has no limit as to time period and SSC has failed to provide lot numbers for the products for which it seeks identification. Also, Feit Electric objects to the Interrogatory to the extent that it seeks confidential, trade secret, or proprietary business, technical, marketing, financial information, or documents potentially covered by a third-party confidentiality agreement.

Additionally, Feit Electric objects to this Interrogatory because Feit Electric does not itself research, design, develop, engineer, specify in detail beyond performance objectives and aesthetics, manufacture, offer to sell independent of a finished lighting product, and/or sell independent of finished

lighting product LEDs. Rather, Feit Electric purchases such components "off the shelf" from a variety of third-party suppliers in arms-length transactions. Feit Electric therefore does not create, receive, retain, or otherwise have custody or control of technical information related to the LEDs it has purchased.

Furthermore, Feit Electric objects to this Interrogatory as it contains a multitude of discrete subparts, which count against the 25 per party limit as stated in Federal Rule of Civil Procedure 33(a)(1). . . . Specifically, this Interrogatory seeks identification of an indeterminable number of Feit Electric products, and thus, this Interrogatory alone accounts for an indeterminable number of interrogatories.

**INTERROGATORY NO. 7:**

For each Accused Product sold from 2016 to present, provide your revenues and profits on a monthly basis or the shortest interval for which records are kept, identifying each such product sold by you, all model or part numbers used to refer to it (including the designations identified in response to Interrogatory No. 1), the quantity of goods sold, gross and net revenues, costs (including at least cost of goods sold, actual total cost or variances from standard cost, marketing expenses, and all costs other than standard costs including but not limited to selling, general and administrative expenses), other operating expenses, and profits (including contribution or incremental profits, gross profits, operating profits, and net profits); and identify the three persons most knowledgeable about the facts underlying your answer, and identify supporting documents concerning the information sought in this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 7:**

[General Objections.] Specifically, Feit Electric objects to the term "each Accused Product" as vague, overbroad and premature, for it refers to products that have yet to be identified and enumerated. This term seeks information that is not relevant to the subject matter of this action, and thus the burden of production outweighs SSC's need for the information sought. This term also renders it impossible for Feit Electric to prepare a response to this Interrogatory, as it potentially seeks to cover Feit Electric's entire offering of products containing LEDs. Feit Electric will not speculate to the meaning ascribed to such terms. Feit Electric also objects to this Interrogatory as overly broad, vague, and ambiguous to the extent it is not limited to a relevant time period and scope. For instance, the Interrogatory seeks information from as far back as 2016 and SSC has failed to provide lot numbers for the products for which it seeks identification. Also, Feit Electric objects to the Interrogatory to the extent that it seeks confidential, trade

secret, or proprietary business, technical, marketing, financial information, or documents potentially covered by a third-party confidentiality agreement.

Furthermore, Feit Electric objects to this Interrogatory as it contains a multitude of discrete subparts, which count against the 25 per party limit as stated in Federal Rule of Civil Procedure 33(a)(1). . . . Specifically, this Interrogatory seeks identification of more than 25 Feit Electric products. This Interrogatory further seeks several categories of distinct information, at least ten, including persons most knowledgeable about the facts underlying Feit Electric's response to this Interrogatory and any supporting documents concerning the information sought therein. Thus, this Interrogatory alone accounts for more than 25 interrogatories.

Subject to its General and Specific Objections, and pursuant to correspondence with SSC's counsel dated January 5, 2023, Feit Electric identifies Anu Singh and John McMillin.

**INTERROGATORY NO. 9:**

Identify each supply agreement, distribution agreement, or any other agreement with each supplier and/or manufacturer of the Accused Products; and identify the three persons most knowledgeable about the facts underlying your answer and identify supporting documents concerning the information sought in this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 9:**

[General Objections.] Specifically, Feit Electric objects to the terms "each supply agreement, distribution agreement, or any other agreement" and "each supplier and/or manufacturer" to the extent they seek information that is not relevant to the subject matter of this action, and thus the burden of responding outweighs SSC's need for the information sought. Feit Electric also objects to the term "Accused Products," as vague, overbroad and premature, for it refers to products that have yet to be identified and enumerated. The term renders it impossible to prepare discovery responses as it potentially seeks to cover Feit Electric's entire offering of products containing LEDs. Feit Electric will not speculate to the meaning ascribed to such terms. Feit Electric also objects to this Interrogatory as overly broad, vague, and ambiguous to the extent it is not limited to a relevant time period and scope. For instance, the Interrogatory has no limit as to time period or type of agreement for which it seeks identification. Feit Electric further objects to this Interrogatory to the extent it seeks the disclosure of matters that are privileged or protected under the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Feit Electric objects to this Interrogatory for such an agreement, if any, speaks for itself. Also, Feit Electric objects to this Interrogatory to the extent that it seeks confidential,

trade secret, or proprietary business, technical, marketing, financial information, or documents potentially covered by a third-party confidentiality agreement.

Also, Feit Electric objects to this Interrogatory as it contains a multitude of discrete subparts, which count against the 25 per party limit as stated in Federal Rule of Civil Procedure 33(a)(1). . . . Specifically, this Interrogatory seeks identification of an indeterminable number of agreements. This Interrogatory further seeks several categories of distinct information, at least three, including persons most knowledgeable about the facts underlying Feit Electric's response to this Interrogatory and any supporting documents concerning the information sought therein. Thus, this Interrogatory alone accounts for an indeterminable number of interrogatories.

Subject to its General and Specific Objections, and pursuant to correspondence with SSC's counsel dated January 5, 2023, Feit Electric responds as follows: Feit Electric purchases products from contract factories by purchase order (which incorporate by reference a published defense and indemnification agreement) and does not establish overarching supply or purchasing agreements. However, from time to time, for limited periods, and for limited products, Feit Electric enters into exclusivity agreements. Some of the retailers Feit Electric sells to require Feit Electric to enter into overarching agreements for the products Feit Electric supplies to them, which may address the mechanics of selling those products, payment, shipping, returns, defense and indemnification, etc. Otherwise Feit Electric does not have distribution agreements for the resale of its products in the United States. Feit Electric further identifies Aaron Feit, Alan Feit and Anu Singh.

**INTERROGATORY NO. 11:**

For each Asserted Patent, state with particularity the circumstances surrounding your first awareness of the Asserted Patent, including the date when you first became aware of the Asserted Patent, the persons involved in the circumstances and events when you first became aware of the Asserted Patent, the identity and content of any communications or documents relating to your awareness of the Asserted Patent, and all actions taken by you relating to, or as a result of, your becoming aware of the Asserted Patent.

**RESPONSE TO INTERROGATORY NO. 11:**

Feit Electric hereby incorporates by reference its General Objections described above. In addition to and without waiving the foregoing General Objections, Feit Electric objects to this Interrogatory to the extent it seeks the disclosure of matters that are privileged or protected under the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Feit Electric also objects to the term "first awareness," as vague and ambiguous. Feit Electric further objects to this Interrogatory to the extent it

attempts to circumvent the deadlines imposed, or those not yet imposed, by the Federal Rules of Civil Procedure, the Court's local rules, and/or the Court's orders.

Furthermore, Feit Electric objects to this Interrogatory as it contains a multitude of discrete subparts, which count against the 25 per party limit as stated in Federal Rule of Civil Procedure 33(a)(1). . . . Specifically, this Interrogatory seeks several categories of distinct information pertaining to its "first awareness" of all thirteen "Asserted Patents." Thus, this Interrogatory alone accounts for an indeterminable number of interrogatories, and at least thirteen. Feit Electric also objects to this Interrogatory as premature as discovery is in its early stages and Feit Electric has not yet solidified its defenses. . . .

**INTERROGATORY NO. 14:**

For each Accused Product, identify all products made by same/similar processes, having the same/similar structures, or having the same or similar components.

**RESPONSE TO INTERROGATORY NO. 14:**

[General Objections.] Specifically, Feit Electric objects to the term "all products," to the extent it seeks information that is not relevant to the subject matter of this action or that is not in Feit Electric's possession, custody or control, and thus the burden of responding outweighs SSC's need for the information sought. Feit Electric also objects to the term "each Accused Product" as vague, overbroad and premature, for it refers to products that have yet to be identified and enumerated. The term renders it impossible to prepare discovery responses as it potentially seeks to cover Feit Electric's entire offering of products containing LEDs. Feit Electric will not speculate to the meaning ascribed to such terms. Feit Electric further objects to this Interrogatory as overly broad, vague, and ambiguous to the extent it is not limited to a relevant time period and scope. For instance, the Interrogatory has no limit as to time period and SSC has failed to provide lot numbers for the products it accuses of infringement. Feit Electric objects to this Interrogatory to the extent it seeks the disclosure of matters that are privileged or protected under the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Also, Feit Electric objects to the Interrogatory to the extent that it seeks confidential, trade secret, or proprietary business, technical, marketing, financial information, or documents potentially covered by a third-party confidentiality agreement.

Furthermore, Feit Electric objects to this Interrogatory as it contains a multitude of discrete subparts, which count against the 25 per party limit as stated in Federal Rule of Civil Procedure 33(a)(1). . . . Specifically, this Interrogatory seeks identification of products made by the same/similar processes, etc., as an

indeterminable number of products, and thus, this Interrogatory alone accounts for an indeterminable number of interrogatories.

See ECF No. 79-1, Joint Stip. at 11-26.

### C. The Parties' Arguments

#### 1. Plaintiffs' Motion to Compel

In the Joint Stipulation, Plaintiffs make the following arguments as to why the Court should compel Defendant to provide responses to the Interrogatories.

##### a. Background

Plaintiffs state this is a patent infringement action to enforce Plaintiffs' "patented technology relating to LEDs and LED lighting devices." Id. at 28. Specifically, Plaintiffs allege that Defendant has infringed patents including the "Asserted Patents" through its manufacture and sale of certain LED products. Id. Plaintiffs identified certain LED light bulb products as part of the "Accused Products" that are exemplary of Defendant's products that include infringing components. Id. at 28-29. Plaintiffs have also identified additional products in its Preliminary Infringement Contentions ("PICs"), attached as Exhibit 2 to its Supplement. ECF No. 83-3, Exh. 33, PICs. However, "the infringing components are not transparent without discovery" and "the information about similar products is solely in Feit's possession." ECF No. 79-1, Joint Stip. at 29.

On December 15, 2022, Plaintiffs served the Interrogatories. Id. at 29-30. On January 17, 2023, Defendant served its responses which Plaintiffs characterize as "a litany of boilerplate objections" that "provided no substantive information" other than "identifying names of three persons." Id. at 30. The parties unsuccessfully met and conferred on January 26, 2023. Id. at 30-31. In subsequent communications, "Feit would not agree to identify its components, would not commit to identifying the LEDs used in all of its accused products, [and] would not answer any other interrogatories." Id. at 31.

During the parties' informal discovery conferences in February 2023, Defendant implied that it could not answer the Interrogatories because, for example, "it did not 'track' its products by the LEDs used therein," but later acknowledged that it could "for at least some products input a product name in its system and provide the LEDs used therein." Id. In prior discussions, Defendant has also averred that "it need not provide any information about accused products unless SSC first produced 'lot codes' or 'lot numbers' for the products it reverse-engineered in its Complaint." Id. at 31-32. However, in an unrelated litigation in the Central District of California—Lexington Luminance LLC v. Feit Electric Company, Inc., No. 2:18-cv-10513-PSG-KS—a manager at Feit gave deposition testimony representing that "Feit knows the LEDs used in each [of its] product[s]" and that Feit "maintains records of the LEDs used in each product." Id. at 32-33 (internal citations omitted).

/ / /

b. Legal Arguments

Plaintiffs first argue that even if portions of the Interrogatories are objectionable, Defendant should be made to answer the non-objectionable portions. Id. at 34. Plaintiffs cite to Federal Rule of Civil Procedure ("Rule") 33(b) for the proposition that to the extent an interrogatory is not objected to, it "'must . . . be answered separately and fully in writing under oath.'" Id. Here, Defendant has objected that certain of the Interrogatories "cover products that Feit considers to be irrelevant," but Defendant is still obligated to respond with respect to other products.[1] Id. at 35.

Next, Plaintiffs explain why Defendant should be compelled to respond to each Interrogatory. For Interrogatories 4 and 14, Plaintiffs argue that they "straightforwardly ask[] for information regarding products having the same or similar LED components as the Accused Products" and "on products that are made with the same or similar components and processes as the Accused Products." Id. at 36. Plaintiffs "should reasonably be permitted to know which other products have the same features that have expressly been identified as infringing" by their "detailed infringement analysis." Id. at 36-37 (citing, inter alia, Lexington Luminance LLC v. Feit Electric Co., Inc., No. CV 18-10513-PSG (KSx), 2020 WL 10052406 at *7-8 (C.D. Cal. Aug. 10, 2020)). Based on Feit's representations in this action, and its witness's testimony in Lexington Luminance, Plaintiffs assert that Defendant can identify the LEDs used in its products, and, to the extent Defendant truly lacks such knowledge, "Feit can say so under oath in its verified response to the Interrogatory." Id. at 37 (citing Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009)). Further, Plaintiffs state that Defendant has only offered "vague and unsubstantiated" claims that identifying which products use the LEDs in question would be burdensome and has "refused to provide any information." Id. at 37-38 (emphasis in original).

Defendant has "only agree[d] to provide limited information for the specific 'lots' SSC reverse engineered and no information about any other Accused Products." Id. at 38. A lot code is a number consisting of a vendor identifier, the date the lot was produced, and sometimes a code indicating the lot's specific workshop or assembly line; thus, an "accused product can have many lot codes," but Plaintiffs seek discovery on the Accused Products, not specific lots. Id. at 39. Defendant's arguments should be rejected because: (1) Feit does not organize its products in its internal systems only by lot code and can obtain information for the Accused Products by their "item number"; (2) Defendant's position would require Plaintiffs to "test all product lot codes" which is unreasonable "because of the sheer expense of analyzing such a vast number of LEDs"; (3) if Defendant can only access information by lot codes, it is in a better position to "identify all of the lots for the Accused Products and provide all of the information for the lots

[1] Plaintiffs cite to several cases in which they assert courts applied Rule 33(b) to require parties to answer discovery in part, even if elements of the discovery requests were determined to be overbroad, including In re Rivera, No. CV 16-4676 JAK (SSx), 2017 WL 5163695 at *6 (C.D. Cal. Apr. 14, 2018) and Shuckett v. Dialamerica Marketing, Inc., No. 17-cv-2073-LAB(KSC), 2018 WL 4350123 at *9-11 (S.D. Cal. Sept. 10, 2018). Id.

associated with a specific product"; and (4) Feit's position is contrary to the law and was already rejected in Lexington Luminance, 2020 WL 10052406, at *6. Id. at 39-41.

Regarding Interrogatories 1-3, Plaintiffs argue they seek "basic information" about Feit's LED products and the components in the LED products which is "highly relevant to assessing which devices utilize the same LED components as those models that are known to infringe and determining costs and damages for the Accused Products." Id. at 41-42. Defendant should be required to identify the remainder of Feit's LED products because: (1) to the extent Feit argues it would be too burdensome to identify such products, Feit can simply identify all of its products, and the LEDs used in them, and "allow[] SSC to identify which products include the same LEDs as the Accused Products"; (2) "identification of unaccused products is relevant to royalties, damages and the availability and success of non-infringing alternatives"; (3) Feit has challenged the asserted patents on grounds of obviousness, and Plaintiffs can show commercial success "by presenting evidence of a market premium commanded by patent-practicing products over non patent practicing products"; and (4) to the extent the full scope of this Interrogatory is deemed objectionable, "Feit is still obligated to fully answer the unobjectionable part" under Rule 33. Id. at 42-44 (citations omitted).

Regarding Interrogatory No. 7, Plaintiffs argue that sales and profits for the Accused Products is a "straightforward request, which is part of nearly every patent infringement case" and are "crucial to SSC's damages and its relief for infringement." Id. at 45 (citations omitted). For Interrogatory No. 9, Plaintiffs state, "The contents of these [manufacturing and supply] agreements are highly relevant for determining Feit's profitability, its ability to access non-infringing alternatives, and the manufacturers . . . that supply the Accused Products. Such information may also be relevant for responding to Feit's license defenses." Id. at 46. Plaintiffs argue that Interrogatory No. 11 is "highly relevant to SSC's allegations of willful infringement, which Feit has repeatedly sought to dismiss." Id. at 47.

Plaintiffs further argue the Court should reject Defendant's attempt to limit the Interrogatories on the grounds that they contain multiple subparts. Id. at 48. Plaintiffs argue, "[c]ourts have repeatedly held that 'interrogatory subparts are to be counted as one interrogatory'" if "'they are logically or factually subsumed within and necessarily related to the primary question.'" Id. (quoting Safeco of Am. v. Rawstrom, 181 F.R.D. 441, 444 (C.D. Cal. 1998)). This Court has already rejected the argument that if an interrogatory seeks information about multiple products or patents, it constitutes multiple interrogatories in Lexington Luminance, 2020 WL 10052402, at *6. Id. at 49-50. There, the Court "held that discovery seeking information about multiple accused products [] 'was sufficiently related to a single inquiry' and should not constitute separate interrogatories." Id. at 49 (quoting Lexington Luminance, 2020 WL 10052402, at *5-6). Additionally, "courts have repeatedly held that interrogatories seeking supporting documents and witnesses, as well as other information, do not constitute separate interrogatories." Id. (citations omitted, emphasis in original).

Finally, Plaintiffs assert that to the extent it lacks responsive information "Feit should say so with specificity in its verified interrogatory response" and request that the Court award SSC fees and costs for bringing this motion. Id. at 52.

### 2. Defendant's Opposition to the Motion to Compel

In the Joint Stipulation, Defendant makes the following arguments why the Court should deny Plaintiffs' Motion to Compel.

#### a. Background

As an initial matter, Defendant argues that the Court made clear that it would not "act as scrivener for discovery," but that Plaintiffs' MTC "asks the Court to do just that compel some arbitrary scope within Plaintiffs' overly expansive requests." Id. at 53-54 (citations omitted). Defendant then describes the LED technology at issue. Id. at 56.

Next, Defendant explains that it is a "distributor of lighting products" but does "not manufacture these products," nor manufacture LED chips or packages; rather, it "purchases finished products for importation and sale." Id. at 57. Because of this, Defendant "typically does not have insight into the details of the components incorporated into the finished goods" and in some instances "has limited information," or none, "about the LED packages in the products." Id. Feit "has only very general and broad knowledge about LED chips and knows nothing about the details of LED chips or the manufacture of LED chips or LED packages." Id. at 57-58. As for the patents-in-suit and Accused Products, "[a]ll the accused finished lighting products and LED components were built by overseas, independent manufacturers and then sold to Feit Electric for distribution." Id. at 58.

Defendant also provides a brief history of the parties. Specifically, that: (1) Plaintiffs are suppliers of LED packages; (2) Feit purchased LED packages from SSC in the past, but "ceased doing so when SSC undertook a patent litigation campaign against Feit Electric customers"; (3) SSC failed to honor a defense and indemnity obligation to Feit when SSC's LED packages were accused of infringement by a nonparty; and (4) Defendant believes this action "is a continuation of SSC's patent litigation campaign to coerce Feit" into an "unreasonable[] and one-sided LED package purchasing agreement." Id. at 58-59 (citation omitted).

#### b. Legal Arguments

Defendant first argues that Rule 33(b) "does not require the Court to determine what portions of these expansive [I]nterrogatories are non-objectionable and re-write them to proper scope; rather, Rule 33(b) only requires a party to "respond to portions of discovery that the party has not objected to." Id. at 59 (citation omitted). Thus, in the present case, "Rule 33(b) is not applicable as Feit Electric has objected to each of these [I]nterrogatories in their entirety." Id.

Second, Defendant asserts that Interrogatories 1-4 "far exceed[] the permissible scope of discovery." Id. at 60. These requests seek information on "thousands of products and their individual components" with no connection to this litigation and "cover the entirety of [Feit's] LED product line and their indisputably irrelevant components." Id. Defendant claims Interrogatory No. 1 is an improper "fishing expedition." Id. at 60-61. The Court has rejected

motions to compel responses to similar discovery requests in the past and has indicated in the present action that Interrogatory No. 1 is "problematic." Id. at 61 (citing CAO Lighting, Inc. v. Signify N.V. et al., No. 2:2:21-cv-08972, at 5 (C.D. Cal. Sept. 22, 2022); Ex. 4 (February 16, 2023 Hearing Tr.) at 16:8, 18:22-25). Interrogatory No. 1 "arbitrarily implicated thousands of products simply because they incorporated LEDs for illumination and were sold by [Feit] in the past six years." Id.

Interrogatory No. 2, Defendant argues, goes even further as it requests that Feit "identify all components in the LED Lighting Product" and does not have a temporal limitation, making it "virtually boundless." Id. at 61-62. Requiring Feit to identify all components seeks irrelevant information and is "objectively and indisputably unreasonable." Id. at 62. This is true in part because, for example, a component such as a circuit board is itself made up of numerous components, "such as metal, solder, [and] diodes," which further are made of additional sub-components—such information has no bearing on Plaintiffs' allegations and SSC has not sufficiently narrowed or limited its request. Id. SSC's request is thus "a fishing expedition at best and frivolous and interposes to harass and overburden [Defendant] at worst." Id.

Similarly, Interrogatory No. 3 seeks five subcategories of information for each LED lighting product, including "all printed circuit board [("PCB")] components," making it unlawfully burdensome because "[e]ven if possible, this would take months to catalog, an effort that is in no way proportionate to SSC's need for the information," especially considering that SSC has not demonstrated any PCB components are relevant to its allegations. Id. at 62-63. And Interrogatory No. 4 is also "impermissibly broad and virtually boundless." Id. at 63. It "wrongly presumes that [Feit] tracks the requested information in a manner that would enable a substantive response" and places an undue burden on Feit "to determine which of its own products have 'structurally similar LED Components'" because Feit would need "to reverse engineer the LED chips in its own products to determine this information when the burden of proving infringement rests with SSC." Id.

Defendant further argues that Plaintiffs' reliance on Lexington Luminance is unconvincing because: (1) the "dispute in that matter came after both parties served contentions and opening claim construction briefs" and "was unique to the facts of the case"; (2) the discovery at issue "was substantially narrower as the [p]laintiff was only seeking information on products that the same LED Components used in the accused products," rather than information on all Feit's LED products; and (3) Lexington Luminance does not support the discovery here "that covers any component in an LED product and seeks information on function or structural similarities of those countless components over many years." Id. at 64 (citations omitted).

Next, Defendant argues that while discovery of certain financial information and agreements may be warranted, Interrogatories 7 and 9 are impermissibly broad and seek materials unrelated to this action. Id. at 65. Interrogatory No. 7 "provides no basis to reasonably identify the scope of products referenced" and "Plaintiffs have not met their burden of demonstrating that the products listed in its FAC are representative of any other products." Id. at 66. Similarly, Interrogatory No. 9 "seeks all of Feit Electric's agreements and is in no way

tailored to the dispute," which would "capture wholly unrelated agreements for other products or even services . . . clearly unrelated to this matter." Id. at 67 (emphasis in original).

Defendant argues Interrogatory No. 11 is "overly broad, disproportionate to the needs of the case, and includes at least 12 different sub-parts." Id. It would require Defendant to summarize documents that Plaintiffs could more easily request Feit produce via a request for production ("RFP") or that SSC already has in its custody. Id. at 67-68. Thus, there is no "marginal utility" to requiring Defendant to provide the information via an interrogatory and the request is not proportionate. Id. at 68 (citation omitted). Interrogatory No. 11 is also overly broad and vague because it would arguably require Defendant to "state with particularity" every action it has taken in this case. Id. Further, Interrogatory No. 11 seeks facts about "twelve unrelated patents, documents containing the facts, and persons knowledgeable about those facts," which constitutes separate interrogatories. Id. (citing Stamps.Com, Inc. v. Endicia, Inc., PSI Sys. Inc., No. CV 06-7499-ODW (CTx), 2009 WL 2576371, at *3 (C.D. Cal. May 21, 2009)).

Defendant also argues that Interrogatory No. 14 is overly broad as it "goes beyond the impermissibly broad LED Components that are requested in Interrogatory 4 to any components." Id. at 69 (emphasis in original). It is, thus, a "clear fishing expedition that implicates all of the Feit Electric products" in part because Plaintiffs "provide no specificity as to the process, structures or components" relevant for Defendant to determine what constitutes "same" or "similar." Id. at 69-70 (citations omitted).

Defend asserts that Interrogatories 1-3, 7, and 9 are "further improper because each seeks 'facts, documents, and witnesses,' which the Central District of California has routinely held constitutes discrete sub-parts" and such "expansive sub-topics must be their own separate interrogatory." Id. (citing, inter alia, Lexington Luminance LLC v. Feit Elec. Co., Inc., No. CV 18-10513-PSG (KSx), Dkt. 57 at *3-4 (C.D. Cal. Nov. 21, 2019); Super. Commc'ns v. Earhugger, Inc., 257 F.R.D. 215, 218 (C.D. Cal. 2009)).

Finally, regarding SSC's "ancillary allegations," Defendant argues that SSC: (1) misrepresented Feit's willingness to engage in reasonable discovery; (2) makes "unsubstantiated claims about what information [Feit] can readily obtain about their products" and "mischaracterizes the testimony of [Feit's] witness from a previous case"; and (3) "uses these mischaracterizations to request attorney's fees" when, if anything, the Court should aware Feit attorney's fees under 28 U.S.C § 1927. Id. at 71-72.

### 3. Defendant's Supplemental Opposition to the Motion to Compel

In its Supplemental Opposition, Defendant argues that this Court "was clear months ago that it construes discovery as written and SSC's discovery was objectively far too broad," but rather than serve "new narrowly tailored discovery," SSC has "burden[ed] this Court with this Motion [to Compel]." ECF No. 82, Supp. Opp'n at 2 (citations omitted).

To illustrate the broad nature of the Interrogatories, Defendant states that "SSC served Preliminary Infringement Contentions . . . that chart only 155 accused products, far less than the

thousands of [Feit] products SSC is demanding discovery for in these [Interrogatories]." Id. Defendant has moved to strike any uncharted products from Plaintiffs' contentions and "the Court should not allow SSC to seek discovery on thousands [of] products with no discernible theory of infringement." Id. (citation omitted). Defendant notes that Feit's "current catalog alone consists of over 1,300 different LED light bulbs in addition to hundreds of" lighting products, the "vast majority of which are not accused products." Id. at 3 (citation omitted). Defendant reiterates that Plaintiffs are engaged in a "fishing expedition." Id. at 2-3.

**4. Plaintiffs' Supplemental Brief Re Motion to Compel**

In their Supplemental Brief, Plaintiffs emphasize that, to date, Defendant has neither provided substantive answers to the Interrogatories, nor "produced a single document." ECF No. 83, Supp. to MTC at 2. Even after Plaintiffs provided "hundreds of infringement contention claim charts detailing where in the LEDs of the Accused Products each asserted claim limitation is found," Defendant has "still failed to provide any supplement to its deficient interrogatory responses." Id. (citations omitted). "There can be no doubt that the Accused Products include, at least, every single product for which SSC provided a claim chart," and thus, Feit must "provide substantive responses with respect to at least those products." Id.

Regarding Defendant's specific objections to each Interrogatory, Plaintiffs respond as follows. Interrogatories 4 and 14 do not seek information "without any connection to this litigation"; rather, they "seek to determine the true scope of Feit's infringement by asking Feit to identify other products that contain the same or similar structures or LED components." Id. at 3 (citations omitted, emphasis removed).

Regarding Interrogatory No. 7, even if "the ultimate burden for purposes of infringement at trial is on SSC, that does not excuse Feit from providing relevant information in its possession." Id. at 4. The term "Accused Product" is not vague, and there is no reason for Feit to not provide the requested information at least for products identified in SSC's infringement contention claim charts. Id. And Interrogatory No. 9 does not seek "all" Feit's agreements, but rather "seeks identification of a limited set of agreements related specifically to the manufacturers, suppliers, and distributors of the Accused products." Id. at 4-5 (emphases in original). Such information is relevant to this matter because "[a]greements between Feit and its suppliers, manufacturers, and/or distributors relating to labor, design, and packaging are clearly related to costs and profits for the Accused Products." Id. at 5.

As for Interrogatory No. 11, Feit speciously claims SSC could more easily and properly seek the information via an RFP, but SSC already "requested these documents in RFP No. 10," and, "despite promising to do so, Feit has produced no documents." Id. Further, Feit mischaracterizes Interrogatory No. 11 as seeking information related to every action Feit has taken related to its awareness of the Asserted Patents—in reality, "SSC limited its interrogatory to 'first awareness' in an effort to target discoverable evidence regarding willful infringement." Id. at 6. Finally, the information sought in Interrogatories 1-3 is clearly connected to this litigation and the asserted claims and patents. Id. If Feit's production would be burdensome

because it "has infringed on a massive scale," that does not relieve Feit of its obligation to provide information about its products. Id.

## II. DISCUSSION

### A. General Legal Standards Regarding Discovery

Federal Rule of Civil Procedure ("Rule") 26(b)(1) governs the scope of permissible discovery and provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Nguyen v. Lotus by Johnny Dung Inc., No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019) (internal citations and quotation marks omitted). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009) (internal citations and quotation marks omitted).

Because discovery must be both relevant and proportional, the right to discovery, even plainly relevant discovery, is not limitless. See Fed. R. Civ. P. 26(b)(1); Nguyen, 2019 WL 3064479, at *1. Discovery may be denied where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009). "The party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied." Reece v. Basi, No. 2:11-CV-2712 TLN (AC), 2014 WL 2565986, at *2 (E.D. Cal. June 6, 2014), aff'd, 704 F. App'x 685 (9th Cir. 2017) (quoting Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)). Moreover, when ruling on a motion to compel in a patent case, the law of the regional circuit controls because orders compelling discovery are not unique to patent law. See Drone Techs., Inc. v.

Parrot S.A., 838 F.3d 1283, 1297 (Fed. Cir. 2016) (noting that the Federal Circuit is "guided by regional circuit law when reviewing discovery rulings").

Finally, "[t]he district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." United States ex rel. Brown v. Celgene Corp., No. CV 10-3165 GHK (SS), 2015 WL 12731923, at *2 (C.D. Cal. July 24, 2015) (internal citations and quotation marks omitted).

**B. Interrogatory Requirements and Scope Under Rule 33**

Rule 33 governs interrogatories to parties. The purpose of interrogatories is to limit and clarify the issues for the parties in preparation for further trial proceedings. See Soria v. Oxnard Sch. Dist. Bd. of Trustees, 488 F.2d 579, 587 (9th Cir. 1973). "An interrogatory may relate to any matter that may be inquired into under Rule 26." Fed. R. Civ. P. 33(a)(2). "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4).

"If objections are made, the burden is on the interrogating party to move under Rule 37(a) for a court order compelling answers, in the course of which the court will pass on the objections. The change in the burden of going forward does not alter the existing obligation of an objecting party to justify his objections." Fed. R. Civ. P. 33, Advisory Committee Notes 1970 Amendments, Subdivision (a)(3). Parties responding to interrogatories must do so "to the fullest extent possible" and "objections must be stated with specificity." Celgene Corp., 2015 WL 12731923, at *4 (citations omitted).

**C. Analysis**

**1. Interrogatories 4, 7, 9, 11, and 14 Contain Improper Discrete Subparts**

With respect to what constitutes a discrete subpart of an interrogatory such that it should count as a separate interrogatory can be a complicated and is a recurring question in patent cases that "present[s] unique challenges with respect to the application of Rule 33's numerical limit on interrogatories." Synopsys, Inc. v. Atoptech, Inc., 319 F.R.D. 293, 294 (N.D. Cal. 2016); see Finjan, Inc. v. Qualys Inc., No. 18-CV-07229-YGR(TSH), 2020 WL 4923964, at *1 (N.D. Cal. Aug. 21, 2020) (noting that the question of subparts in patent cases "is one of those recurring discovery disputes that seem to come up all the time"). This is because "'discreteness' cannot reliably be captured by a verbal formula, and that ultimately the issue turns on a case-by-case assessment of the degree to which the subpart is logically related to the primary question in the

interrogatory, as opposed to being separate and distinct." Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co., 315 F.R.D. 191, 197 (E.D. Tex. 2016). This may further be complicated if multiple patents are asserted over multiple accused products because "[t]he answer may depend on how similar the accused products or patents-in-suit are to each other." Finjan, 2020 WL 4923964, at *1 (citing Synopsys, 319 F.R.D. at 295-96)).

Similarly, if an interrogatory seeks information and the persons who have relevant knowledge of the information, it does not automatically render the request related to the persons to be a separate inquiry. See Stamps.Com, Inc. v. Endicia, Inc., PSI Sys. Inc., No. CV 06-7499-ODW(CTx), 2009 WL 2576371, at *3 (C.D. Cal. May 21, 2009) (noting that "requests for facts, persons with knowledge of those facts and documents containing those facts should be considered one interrogatory because they are subsumed within the primary question of facts supporting defendants' infringement and validity contentions"). In Synopsys, 319 F.R.D. at 297, the court set forth the general rule: "Subparts asking for facts, documents, and witnesses relating to a primary contention or allegation are logically or factually related, and thus should be construed as subsumed in the primary question. The court notes that the outcome could be different depending on how the subparts relate to each other. For example, in a non-contention interrogatory context, subparts which were unrelated to each other constituted discrete subparts."

Turning then to the interrogatories at issue in this motion, it does not appear that any of them are seeking facts in support of a contention made by Defendant.

With respect to seeking the identification of documents and identities of persons most knowledgeable about the information sought in the interrogatories, it appears that Plaintiffs only seek such information with respect to Interrogatories 1, 2, 3, 7, 9, and, potentially, 11. With respect to Interrogatories 1, 2, 3, 7, and 9, the Court finds that the portions of the interrogatories seeking the identification of documents and identities of three individuals in relation to the information sought do not count as discrete subparts as "they are subsumed within the primary question." Stamps.Com, 2009 WL 2576371, at *3; see also Synopsys, 319 F.R.D. at 297 (finding that interrogatory seeking information related to the "accused instrumentality . . . and the person(s) most knowledgeable about this response" constituted a single interrogatory). As for Interrogatory No. 11, regarding when Defendant first became aware of the patents-in-suit, the persons whose identities are sought with relation to this information is also subsumed within the primary topic, i.e. when Defendant became aware of the patents-in-suit.

As for whether an interrogatory that seeks information regarding more than 25 products, on its own, constitutes a basis to find that the interrogatory seeks information that is more appropriately brought in 25 separate interrogatories, the Court does not find this to be a basis to conclude that such an interrogatory must divided into the number of products at issue. This is

because, if an interrogatory seeks information related to a number of products that incorporates a single allegedly infringing component that is covered by a single or related set of patents, more recent courts have not found this to be a basis to convert the interrogatory into one that should be deemed to be an improper combination of interrogatories that should have been separately propounded for each product. See Lexington Luminance LLC, 2020 WL 10052402, at *7 (finding that in a case involving the assertion of a single patent against multiple accused products "the information sought . . . regarding the manufacturer and manufacturers' part numbers for the Accused Products are sufficiently related to a single inquiry as to constitute one Interrogatory"); Erfindergemeinschaft Uropep GbR, 315 F.R.D. at 199 (noting that in an interrogatory seeking information related to three patent applications is properly brought in a single interrogatory because "the interrogatory makes clear that the three are sufficiently related that they can properly be the subject of a single inquiry"); but see Stamps.Com, 2009 WL 2576371, at *3 (noting there the court found "that interrogatories seeking facts relating to separate patents or separate accused products seek information concerning distinct subjects and, therefore, constitute separate interrogatories").

If, however, an interrogatory seeks information related to patents-in-suit that are sufficiently different and require a separate inquiry of the accused products, it may constitute discrete subparts. See Finjan, 2020 WL 4923964, at *1 (noting that "[t]he answer may depend on how similar the accused products or patents-in-suit are to each other"). In this case, there are twelve patents-in-suit and though they generally relate to LED lights, it is unclear how related they are and both the FAC and Preliminary Infringement Contentions appear to show that different accused products appear to allegedly infringe different patents-in-suit. See ECF No. 49, FAC at 16-43 (identifying various exemplary accused products as allegedly infringing various exemplary claims in separate patents-in-suit); see also ECF No. 83-3, Exh. 33, PICs at 4-23 (same). Though there appear to be some allegedly infringing products that are alleged to infringe one or more of the Asserted Patents, the Court does not have the technical expertise, nor have Plaintiffs shown how they are similar such that an interrogatory seeking information related to each patent-in-suit or each accused product may properly be seeking information related to the same primary question of facts. Moreover, Defendant argues that the twelve patents-in-suit are unrelated, ECF No. 79-1, Joint Stip. at 58, and this does not appear to be controverted by Plaintiffs.

Consequently, because an answer related to each Asserted Patent and accused product would require an analysis of a separate set of facts, the Court finds that Interrogatories 4 ("For each LED Component incorporated in an Accused Product . . ."), 7 ("For each Accused Product sold from 2016 to present . . ."), 9 ("Identify each supply agreement . . . of the Accused Products . . ."), 11 ("For each Asserted Patent, . . ."), and 14 ("For each Accused Product . . .") are properly considered to contain twelve separate interrogatories as they relate to each of the twelve

Asserted Patents, individually. Cf. Synopsys, 319 F.R.D. at 296 (noting that interrogatories at issue related to accused products that were accused of infringing "all four patents-in-suit in substantially similar ways" and were properly included in a single interrogatory).

On this basis, Plaintiff's Motion to Compel is DENIED as to Interrogatories 4, 7, 9, 11, and 14.

**2. Interrogatories 1-3**

Interrogatories 1-3 each seek information regarding every LED Lighting Product that Defendant sells, ranging from detailed information related to Defendant's suppliers and serial numbers for every LED Lighting Product from 2016 to the present (Interrogatory No. 1), an identification of each component in every LED Lighting Product (Interrogatory No. 2), to every manufacturer of every LED Lighting Product and the printed circuit board ("PCB") component used in every Lighting Product (Interrogatory No. 3). In its interrogatories, Plaintiff defines LED Lighting Product to be "any product that uses an LED for illumination." ECF No. 79-5, Exh. 2 at 5.

As set forth previously, regarding Interrogatories 1-3, Plaintiffs contend that the information is relevant to identify other LED products that may contain infringing components, allow for use in its damages case, and allow for use in its opposition to Defendant's claims that the inventions in the Asserted Patents are obvious. ECF No. 79-1, Joint Stip. at 42-44 (citations omitted). Plaintiffs additionally argue that even if the Court determines the interrogatories are overbroad, it should still order Defendant to respond to the extent relevant information is responsive to these interrogatories. Id. at 34-36.

The Court agrees that these interrogatories constitute an improper fishing expedition and seek information from a party that is in the same business space as Plaintiffs. With respect to the burdensome analysis, though not supported by a declaration or other evidence to truly show the burden of what collecting this information would entail in light of how this information is maintained, the Court accepts Defendant's counsel's representation as an officer of the Court that Defendant's current catalog "consists of over 1,300 different LED light bulbs in addition to" other types of lights. Id. at 61. It is also worth noting that none of the information sought is tethered to the Asserted Patents.

As for the argument that this would allow for Plaintiffs to identify other potentially infringing products, when the formatting of its other interrogatories addressed in this order are cured and, if, they seek to propound additional interrogatories, Plaintiffs will have a direct path to obtaining this information by seeking information related to LED lights that contain, use, or were manufactured using discernable processes or structures within the Asserted Patents that are claimed and identified as being infringed. Broadcom Corp. v. Emulex Corp., No. SACV 09-01058-JVS (ANx), CV 10-03963-JVS (ANx), 2010 WL 11465322, at *1 (C.D. Cal. June 30, 2010) (noting that "'[t]he discovery rules are designed to assist a party to prove a claim it

reasonably believes to be viable without discovery, not to find out if it has any basis for a claim'" ) (quoting Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1327 (Fed. Cir. 1990) (emphasis in original)).

Moreover, Plaintiffs have the initial burden to show the relevancy of the discovery sought and though, in a sense, every component of every product containing a component that carries out a similar function as a patented component is a useful data point, for damages and to show commercial success, this information can be obtained from financial information that an alleged infringer will be required to provide and can be used to determine and compare the revenues and margins associated with non-infringing products with the allegedly infringing ones. This, however, would lead to an untenable expansion of discovery that would be unnecessarily time consuming and expensive.

Finally, both parties rely on the plain language of Rule 33 and Plaintiffs rely on the 1993 Amendment Advisory Committee Notes for the proposition that Defendant should still be required to respond to the non-objectionable portions of the interrogatories. Plaintiffs' argument, however, if taken to its next step, is that a party can propound an interrogatory asking for all facts related to a cause of action and then require an answer to at least that portion of information which is appropriately responsive. However, as noted by this Magistrate Judge and others on this Court: "Overly broad and unduly burdensome interrogatories 'are an abuse of the discovery process' and are routinely **denied**." Bos. v. ClubCorp USA, Inc., No. CV 18-3746 PSG (SS), 2019 WL 1873293, at *8 (C.D. Cal. Mar. 11, 2019) (emphasis added). The parties, not the Court, is in the best position to determine what is relevant information to prosecuting the case, in the first instance.

Moreover, other than the general precept that information should be reasonably provided, which is consistent with the requirements of Rule 1 (requiring that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"), Plaintiffs have not cited a single patent or complex case where such an approach has been adopted, nor has the Court been able to locate one. A major issue with such an approach is that a dispute is almost surely to arise when there is a disagreement as to what should have been provided, i.e. what was the appropriate breadth of information.

Consequently, the Motion to Compel with respect to Interrogatory Numbers 1-3 is also DENIED.

/ / /

## III. CONCLUSION

For the reasons set forth previously, Plaintiffs' Motion to Compel is DENIED.

Though Defendant is not required to respond at this time to the interrogatories at issue in the MTC, the Court notes that "[i]n patent cases in particular, where issues are often more complex than the typical federal case for which the presumptive limit was developed, leave to exceed 25 interrogatories may well be appropriate." NantWorks, LLC v. Niantic, Inc., No. 20-CV-06262-LB, 2022 WL 1500011, at *2 (N.D. Cal. May 12, 2022) (internal quotations and citations omitted). Consequently, it would behoove the parties to further discuss and confer in order to exchange the appropriate information in a manner that complies with the provisions of Rule 1 and to provide the relevant information that experienced counsel in patent cases are well aware will likely be ordered produced when appropriately sought. Further, any refusal to provide such information may also result in the inability of a party who has the information to use it at a later point in the case.

**IT IS SO ORDERED.**