Benesch

Simeon G. Papacostas
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Direct Dial: 312.624.6352
Fax: 312.767.9192
spapacostas@beneschlaw.com

November 28, 2023

Honorable Shashi H. Kewalramani, U.S.M.J.
United States District Court, Central District of California
George E. Brown, Jr. Federal Building and United States Courthouse, 3470
12th Street, Riverside, California 92501

Re: *Seoul Semiconductor Co. Ltd. and Seoul Viosys Co. Ltd. v. Feit Electric Company, Inc.*, Case No. 2:22-cv-05097-AB-SH (C.D. Cal.)

Dear Judge Kewalramani:

Defendant Feit Electric Company, Inc. ("Feit Electric") files this Letter Brief respectfully requesting that the Court order Plaintiffs Seoul Semiconductor Co. Ltd. and Seoul Viosys Co. Ltd. (collectively, "Plaintiffs") to promptly provide for inspection the items requested in Feit Electric's September 8, 2023 Notice of Inspection of Tangible Things to Plaintiff Seoul Semiconductor Co., Ltd. (the "Rule 34 Notice," attached as Ex. A[1]). Specifically, Feit Electric requests that the Court order: (1) Plaintiffs to produce the noticed items within the Central District of California, and (2) that Feit Electric, its attorneys, and/or its consultants will not be required to travel to Seoul, South Korea in order to conduct the requested inspection.

## I. INTRODUCTION

Plaintiffs chose to assert twelve unrelated United States patents against nearly 320 accused Feit Electric LED lighting products in the Central District of California. Plaintiffs purchased the Accused Products in the United States and are aware that Feit Electric primarily sells its products in the United States. But because Plaintiffs chose to ship the Accused Products overseas to Seoul, South Korea—ostensibly to run the tests and analyses that Plaintiffs rely on to support their infringement claims outlined in their infringement contentions[2]—Plaintiffs now seek to impose the undue burden on Feit Electric and its team that requires international travel to South Korea just to conduct the noticed inspection. Plaintiffs cite no applicable case law to support their position—the Court noted that the only case Plaintiffs relied on to date "doesn't give me much guidance." *See* Dkt. 131 at 29:3-9. Plaintiffs instead stake their whole position on an estimate of the purported costs involved in shipping the requested items back to this district. But even putting aside whether Plaintiffs' estimate is correct, the inquiry should not focus solely on comparing the cost of shipping versus the cost of travel, but rather on a balance of the producing party's concerns with the requesting party's right to inspect—that balance favors Feit Electric. As discussed below,

[1] Exhibits A – P are attached to the concurrently filed Declaration of Simeon G. Papacostas.
[2] Feit Electric's motion to strike Plaintiffs' Supplemental Infringement Contentions is currently pending before the Court. *See* Dkt. 93; Dkt. 105.

Plaintiffs' position requiring Feit Electric—a California company that notably does not design, develop, specify in detail, or manufacture the key components at issue in this case—to incur such costs in order to inspect products sold and purchased in the United States, and to investigate allegations of infringement of United States patents brought in the Central District of California, is unduly burdensome on its face. Moreover, Plaintiffs' position runs the risk of creating dangerous and burdensome precedent for all accused infringers if adopted by this Court.

## II. BACKGROUND

On September 8, 2023, Feit Electric served its Rule 34 Notice seeking to inspect the requested items[3] at the Newport Beach, California offices of Feit Electric's local counsel. *See* Ex. A. On October 9, 2023, Plaintiffs responded to Feit Electric's request objecting to, among other things, the noticed location for inspection. *See* Ex. B. Instead of producing the Accused Products for inspection anywhere in the Central District of California, Plaintiffs offered to produce them in Seoul, South Korea, on the purported basis that this is "where they are kept in the ordinary course of business." *Id*. The parties met and conferred on October 13, 2023, during which Plaintiffs represented that they bought the Accused Products in the United States and shipped them to South Korea for testing and analysis but would not confirm whether Plaintiffs intended to bring the Accused Products back to the United States for trial, or even for their own expert to inspect them. *See* Papacostas Decl., ¶ 18.

The parties requested a hearing with Magistrate Judge Kewalramani to discuss the issue of the location for the inspection, among other issues. *Id*. That hearing was held on November 9, 2023. *See* Dkt. 131. During that hearing, Plaintiffs could not provide any specifics as to the total inventory of Accused Samples at issue or the cost and logistics for shipping them to the United States, other than to estimate that the materials "could be 15, it could be 20, it could be 12" banker's boxes. *See id*. at 18:1-6. The Court scheduled a second hearing on November 14, 2023 "to discuss the remaining issues with respect to the inspection location." *See* Dkt. 126. In advance of that hearing, Feit Electric met and conferred with Plaintiffs on the afternoon of November 13, 2023, in an attempt to resolve issues before the second conference with the Court. Papacostas Decl., ¶ 19. While the parties were able to agree on a handful of ancillary issues, no agreement was reached as to the inspection location. Further, Plaintiffs did not provide an inventory or estimate for costs of shipping the products on that call. *Id*. During the parties' November 14, 2023 hearing, Plaintiffs for the first time revealed that 164 banker's boxes would be required to ship "317 products" at two products per box, costing upwards of $32,000. *See* Dkt. 128 at 10:2-12:17. The parties were unable to reach agreement, and the Court accordingly set a briefing schedule. *See* Dkt. 127 at 2.

---

[3] The requested items included: (1) the accused products referenced in Plaintiffs' Complaint; (2) the accused products used for or depicted in Plaintiffs' April 20, 2023 Infringement contentions; (3) the accused products used for or depicted in Plaintiffs' August 8, 2023 Supplemental Infringement Contentions; and (4) any Feit Electric product and parts thereof examined, tested, analyzed, photographed, imaged, measured, disassembled, or otherwise reviewed in any way by Plaintiffs and/or their counsel in connection with the present litigation. *See* Ex. A.

## III. LEGAL STANDARDS

Rule 34 of the Federal Rules of Civil Procedure governs the pretrial production of tangible materials and authorizes a party to "serve on any other party a request within the scope of Rule 26(b): to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated tangible things." FED. R. CIV. P. 34(a)(1)(B). In turn, Rule 26(b) contemplates parties obtaining discovery "regarding any nonprivileged matter that is relevant to any . . . claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In determining whether the proposed location of production is reasonable, the Court must balance the producing party's concerns against the requesting party's right to inspect. *Siclari v. CBI Acquisitions,* LLC, No. 2015-28, 2016 WL 6650840, at *2 (D.V.I. Nov. 9, 2016). "The touchtone for analysis of a Rule 34 inspection is reasonableness." *Id*. at *2 (quoting *United States v. Territory of the Virgin Islands*, 280 F.R.D. 232, 235 (D.V.I. 2012).

## IV. ARGUMENT

### A. Feit Electric's Need for Inspection Pursuant to Rule 34 is Justified

As an initial matter, Feit Electric requires the Rule 34 inspection because Plaintiffs are unable or unwilling to provide information regarding the Accused Products it claims it tested in a way that allows Feit Electric to evaluate both the substance and the veracity of Plaintiffs' claims. By way of non-limiting examples, Feit Electric is entitled to know whether Plaintiffs tested multiple samples of any particular Accused Product and the extent of such testing, whether Plaintiffs preserved parts of those samples including those bearing identifying information such as the lot numbers, and whether the testing destroyed or otherwise altered the Accused Products in any way. While Feit Electric reserves the right to conduct testing on the products in Plaintiffs' possession, before Feit Electric can even make that call, it needs to understand the scope and condition of those products as a prerequisite to conducting any such analyses.

To date, Plaintiffs have been less than forthcoming as to the actual details of their testing and analyses underlying their voluminous infringement claims. For example, despite taking time to annotate hundreds of images pasted into their contentions, Plaintiffs refused to provide citations to the source documents for their testing, *see, e.g.*, Dkt. 80-5 at 4, leaving Feit Electric unable to confirm whether Plaintiffs' purported evidence of testing, as currently produced, corresponds to any specific product. As yet another example, Plaintiffs refused to provide lot codes for over fifty Accused Products, i.e., numbers printed or etched on the actual products that identify key information about the product that are necessary to Feit Electric's claims and defenses. *See* Exs. C, D. Indeed, despite Plaintiffs' long history of litigating these patents and their representations that they had long been aware of the purported infringement they allege, *see, e.g.*, Dkt. 1, ¶¶ 22-28, Plaintiffs have repeatedly balked at providing what should be simple, straightforward discovery regarding its infringement claims. Instead, Plaintiffs continue to engage in a broad pattern of delay and obfuscation, manufacturing obstacles aimed at preventing Feit Electric from preparing its claims and defenses and from obtaining the discovery to which it is entitled. *See, e.g.*, Dkt. 124 (the Court finding Plaintiffs' refusal to narrow its asserted claims until after *Markman* proceedings "unworkable"); *see also* Ex. E (describing Plaintiffs' withholding of information regarding inventors and individuals who conducted tests on the Accused Products),

Dkt. 128 at 22:22-28:8 (Plaintiffs "going around in circles" and objecting to issues that were already resolved by the parties' prior agreed protective order). Plaintiffs' refusal to present the Accused Products that are the subject of its Complaint and infringement contentions for inspection at a reasonable location, and its demand that Feit Electric incur the time and cost burden of travelling overseas to conduct its inspection, is merely the latest such Plaintiff-created obstacle aimed at unnecessarily increasing the costs and burdens for Feit Electric to pursue its claims and defenses. This is manifestly improper. *See, e.g., Guevara v. Nissin Foods (U.S.A.) Co.*, No. CV 17-3997-MWF (ASX), 2018 WL 6265093, at *3 (C.D. Cal. Mar. 12, 2018) (Plaintiffs' "continuous pattern of delay and nonresponsiveness" supported a finding of prejudice, and finding that "[w]ithout Plaintiff's participation in discovery, Defendants are unable to prepare their defenses.").

**B. Plaintiffs' Costs Do Not Outweigh the Burden of Travel to South Korea**

Plaintiffs' only actual stated concern here is the cost of packing and shipping the Accused Products they purportedly tested. To that end, Plaintiffs' estimates have varied significantly over the course of the parties' two hearings with this Court—first estimating 15-20 boxes, and then revising that estimate exponentially upwards to 160 boxes. *Compare* Dkt. 131 at 18:1-6 *with* Dkt. 128 at 10:2-12:17. Numerous problems exist with Plaintiffs' vague estimate. For example, Plaintiff asks both Feit Electric and this Court to take them at their word that only two products can fit in a single box, ostensibly so that the products could be packaged in a way to safely ship them. *See* Dkt. 128 at 10:20-11:17. But presumably, Plaintiff would have had to take equal care in shipping the products ***from*** the United States to Korea—Plaintiff has not made any representations regarding how it packed and shipped those products.[4] Similarly, Plaintiffs estimated that the shipping alone would cost over $31,000. *See id.* at 11:22-23. But Plaintiff did not specify a shipping carrier, shipping terms, or any other details regarding their estimate. After the November 14th hearing, Feit Electric made its own inquiries, the results of which raise serious questions as to the appropriateness of Plaintiffs' estimate. For example, Feit Electric obtained an estimate of approximately $5,959 from Federal Express and even lower with DHL, ranging from approximately $1,898 to $3,380. *See* Papacostas Decl., ¶¶ 20-23; Exs. J-P. That is a far cry from Plaintiffs' estimate, and substantially comparable to, if not less than, the cost of only one trip for Feit Electric's team to travel, when taking into account airfare, lodging, meals, and local transportation, let alone multiple trips, should they be required. The costs are even more comparable when taking into account the cost of lost time working due to international travel across multiple time zones. Moreover, Plaintiffs have not revealed the costs they incurred in packing and shipping the products ***to*** South Korea, or whether they used the same courier and shipping terms as those factored into their estimate for the Court at the parties' November 14th hearing. While cost should not be the sole issue, to the extent the Court evaluates the parties' respective costs, any costs Plaintiffs claim they would incur in shipping products back to the United States must be offset by the costs they incurred from their decision to ship them to South Korea.

---

[4] Plaintiffs purchased Accused Products and received them at multiple locations, including in California, Georgia, and New Jersey, among other locations. *See, e.g.*, Ex. F at SSC_FEIT00051322, Ex. G at SSC_FEIT00051324, Ex. H at SSC_FEIT00051329.

**C. Requiring Feit Electric to Travel Internationally Would Set Troubling Precedent**

Feit Electric appreciates the Court's approach to resolving this dispute by weighing the parties' respective costs pursuant to the directive of FED. R. CIV. P. 1, "to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Dkt. 131 at 29:9-15. Feit Electric respectfully submits, however, that a comparison of monetary costs cannot be the only deciding factor when "balancing the producing party's concerns against the requesting party's right to inspect." *Siclari*, 2016 WL 6650840, at *3. Plaintiffs chose to bring its voluminous claims against a California company in United States federal district court, asserting twelve United States patents. Plaintiff knows that Feit Electric does not design, develop, specify in detail, or manufacture the key components at issue in this case, and moreover that Feit Electric's primary market is the United States and its primary operations are in the United States. But Plaintiffs nevertheless chose to ship those products outside the country, even though it had options to conduct the same testing and analysis within the United States. *See, e.g.*, Ex. J. This is not a case where the Rule 34 Notice demands inspection of an immovable facility or unwieldy items that would be impractical to ship. Allowing Plaintiffs to ship key evidence outside the jurisdiction of the United States, and then demanding that Feit Electric incur the burdens of international travel would set a dangerous precedent that would endorse imposing costly obstacles for accused infringers generally. For example, a patentee could levy infringement claims against an accused infringer, then choose to conduct testing at any international location of the patentee's choosing, and further refuse to provide key evidence and information relating to that testing unless the defendant incurs the burden of global travel to that remote location. Endorsing Plaintiffs' position here would invite patentees to deliberately design such testing schemes and would in fact incentivize raising the costs and burden of defending against infringement claims in this way. This Court has already chided Plaintiffs for seeking to litigate an unmanageable amount of claims. *See* Dkt. 124 at 2 ("[T]he present scope of litigation is unmanageable."). Plaintiffs should also not be allowed to needlessly increase Feit Electric's burden of defending this case via another way, i.e., by choosing to ship the Accused Products overseas for its testing and analysis and then demand Feit Electric incur the time, cost, and effort of international travel to inspect them.

**D. Case Law Favors Requiring Plaintiffs to Produce the Products for Inspection in the United States, Specifically in the Central District of California**

Finally, it is notable that the only case law either party has identified to date on the subject of travel from a California district court to Korea to conduct a Rule 34 inspection falls squarely in Feit Electric's favor. *See Rambus Inc. v. Hynix Semiconductor*, Nos. C 05-00334, C 05-02298, C 06-00244, 2007 WL 9653194, at * 6 (N.D. Cal. Sept. 25, 2007) (holding that the producing party's "offer to allow [requesting party] to inspect, in Korea, the schematics in their native format imposes an undue burden" and declining to require requesting party to travel to Korea). While Plaintiffs attempted to distinguish the *Rambus* decision during the parties' November 14th hearing on the basis that transporting the Accused Products was different than the schematics at issue in *Rambus*, courts have also found that "proper packaging and tracked shipping should be adequate to assure that damages does not occur in transit" even where the items are alleged to be fragile. *See, e.g.*, *Siclari v. CBI Acquisitions LLC*, No. 2015-28, 2016 WL 6650840, at *5. (D.V.I. Nov. 9, 2016). F.R.D. 232, 235 (D.V.I. 2012).

Best regards,

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP

*/s/ Simeon G. Papacostas*

Simeon G. Papacostas

STRADLING YOCCA CARLSON & RAUTH
A PROFESSIONAL CORPORATION

*/s/ Salil Bali*

Salil Bali