Benesch

Simeon G. Papacostas
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Direct Dial: 312.624.6360
Fax: 312.767.9192
spapacostas@beneschlaw.com

December 22, 2023

Honorable Shashi H. Kewalramani, U.S.M.J.
United States District Court, Central District of California
George E. Brown, Jr. Federal Building and United States Courthouse, 3470
12th Street, Riverside, California 92501

Re: *Seoul Semiconductor Co. Ltd. and Seoul Viosys Co. Ltd. v. Feit Electric Company, Inc.*, Case No. 2:22-cv-05097-AB-SH (C.D. Cal.)

Dear Judge Kewalramani:

Defendant Feit Electric Company, Inc. ("Feit Electric") files this Reply Letter Brief in further support of its November 28, 2023 Letter Brief (Dkt. 135).

Plaintiffs' Opposition (Dkt. 140, "the Opposition" or "Opp.") sidesteps entirely the fundamental legal question at issue, namely, having availed themselves of the laws and governance of ***this Court***, can Plaintiffs nevertheless force Feit Electric to litigate in Korea? The answer is no. *See Iris Corp. Berhad v. U.S. et al*., 84 Fed.Cl. 489, 494 (2008) ("Plaintiff, a foreign-based entity, voluntarily chose to avail itself of this Court's process and may not use its foreign status to avoid or limit appropriate discovery."). Plaintiffs cite no precedent supporting their position that Feit Electric must travel to Korea and necessarily subject itself to Korean law to conduct discovery important to its defenses.[1] Plaintiffs' position here is particularly untenable because it now beyond dispute that this is ***entirely*** a problem of Plaintiffs' own making. Plaintiffs chose to sue Feit Electric here, yet Plaintiff chose to ship hundreds of purportedly accused products well beyond the jurisdiction. Plaintiffs further chose to rely on infringement contentions with no citations to the record, and similarly chose to stonewall Feit Electric on interrogatories, document requests, and the present Rule 34 request. Plaintiffs have relied on these purportedly tested products for their complaint and infringement contentions, but are now refusing to make them available in the United States. But beyond the present dispute, will Plaintiffs also refuse to provide those products and accompanying parts in the United States for expert depositions and other witness depositions? Further, will Plaintiffs ignore the presently alleged burdens when they eventually bring the tested accused products to trial as evidence?

Indeed, the resolution here also rests ***entirely*** with Plaintiffs. Should they not want to present these products in this District for inspection, they could simply confirm they will not rely on these products and testing at trial—Plaintiffs have yet to state either way. In any event, Feit Electric is entitled to obtain through the discovery process information that will allow it to assess—and

[1] Plaintiffs cite Korean privacy law to block discovery of witness information, and it is uncertain whether Korean law allows for the full scope of inspection provided under the Federal Rules.

challenge—Plaintiffs' claims. *See, e.g.*, *Loctite Corp. v. Fel-Pro Inc.*, 94 F.R.D. 1, 10 (N.D. Ill. 1980), *aff'd and remanded*, 667 F.2d 577 (7th Cir. 1981) ("An alleged infringer must have access to tests conducted by a patentee where those are the only facts which plaintiff has to support its charges of infringement."). Instead, Plaintiffs insist that Feit Electric travel to Korea, potentially wade through Korean law, and guess which products to inspect under an inherently limited timeframe.

## I. FEIT ELECTRIC'S NEED FOR INSPECTION RESTS IN THE LAW.

It is academic that infringement turns on comparison of the ***accused products*** with the asserted patent claim. *See, e.g.*, *Gutterglove, Inc. v. Am. Die and Rollforming, Inc.*, 2:16-CV-02408-WHO, 2018 WL 2356756, at *12 (E.D. Cal. May 24, 2018). Plaintiffs nevertheless question the necessity for the inspection request. *See, e.g.*, Opp. at 3 n.3. But the limited information provided to date reflects that Plaintiffs acquired many, if not all, of the products it tested years ago. *See, e.g.*, Dkt. 135 at 4 n.4. Plaintiffs' vast litigation history[2] further calls into question whether those products are, in fact, what they claim to be. And, of course, Feit Electric must be able to inspect the products for tampering, as well as a host of other defenses that may be available based on the actual accused products. This is especially true where the majority of the asserted claims are directed to microscopic and material properties of components or subparts of the accused products and, most significantly, that Plaintiffs found it appropriate to conduct advanced testing on the accused products in order to support their infringement claims. The need for inspection is particularly exacerbated by Plaintiffs' refusal to provide citations or identifying information in the images presented in its infringement contentions. Plaintiffs fought against having to provide Bates number citations for figures and charts in their infringement contentions. Indeed, Plaintiffs' own choices created the need for inspection of the purportedly tested products.[3] *See Iris Corp.*, 84 Fed. Cl. At 494 ("It is fundamental that parties may simultaneously utilize any or all of the discovery mechanisms authorized by the rules."); *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir.1969), *cert. denied*, 397 U.S. 1027 (1970) ("[T]he scales of justice would hardly remain equal . . . if a party can assert a claim against another and then be able to block all discovery attempts against him.").

## II. THE ALLEGED BURDEN TO PLAINTIFF IS INSUFFICENT TO AVOID INSPECTION IN THIS DISTRICT.

As it relates to burden, Feit Electric does not contend that Plaintiffs "forfeited all protections against undue burden and cost." Opp. at 1. Rather, as Feit Electric stated, "the inquiry should not focus solely on comparing the cost of shipping versus the cost of travel, but rather on ***a balance*** of the producing party's concerns with the requesting party's right to inspect." Dkt. 135 at 1. Under

---

[2] *See, e.g.*, *See Seoul Semiconductor Co. v. Bed Bath & Beyond*, No. CV 18-1387 PSG-SK, 2022 WL 17251954 (C.D. Cal. Aug. 23, 2022).

[3] As part of its Rule 34 request, Feit Electric requested inspection of the parts of samples tested to the extent the samples were disassembled. *See* Dkt. 135-2. During the parties' November 13, 2023, meet and confer, Plaintiffs indicated that while they objected to providing parts of non-accused products, they did not object to those materials if they were from an Accused Product. *See* December 22, Declaration of Simeon G. Papacostas ("Papacostas Decl."), ¶ 2. Plaintiffs now appear to have backtracked. *See* Opp. at 1 n.1.

the law and specific facts presented, "that balance favors Feit Electric." *Id*.

Plaintiffs' claims of burden rests on their assessment that "it would take nearly 7 business days for SSC to package the Accused Products for shipping to the United States and . . . it would require 164 boxes."[4] Based on this estimate, Plaintiffs contend the cost for Feit Electric to travel to Seoul for inspection "is less than half the cost for SSC to ship the products and, importantly, would not involve any risk of loss or damage of Accused Products due to shipping." Dkt. 140. Plaintiffs' conclusion is duly wrong. ***First***, this is not a matter of a simple and short visit to Korea by a single individual. Feit Electric remains unclear on the scope of products Plaintiffs intend to rely upon. Whether there are 60 or 600 products obviously impacts the time for inspection and the number of individuals. In addition to airfare, room, board, and other related costs that Plaintiffs fail to account for, such as multiple trips, there will be lost time and accessibility for Feit Electric employees. ***Second***, Plaintiffs' assessment of the costs and corresponding need is fatally flawed. Indeed, Plaintiffs cost assessment cannot withstand scrutiny. Using the same conditions for shipping carrier, box dimensions, and weight prescribed by Plaintiffs, Feit Electric calculates a shipping cost of, ***at most***, approximately $5250. *See* Papacostas Decl., ¶¶ 3-10; *id.* at Exs. Q-S. The glaring error in Plaintiffs' estimate is that they calculated the cost for a single box and then multiplied that cost by 164, *i.e*., the number of boxes Plaintiffs estimate will be shipped, to reach approximately $31,000. ***But the pricing for multiple boxes does not scale linearly in proportion to the number of boxes***—the cost becomes significantly less as volume increases. *See id.* Plaintiffs' calculations are accordingly facially unreliable. Even using Plaintiffs' estimate, the cost of shipping is far lower than the cost of travel, when taking into account multiple people, multiple trips, food and lodging, and other related costs. In short, whether the Court uses Feit Electric's or Plaintiffs' estimate, the burden for Feit Electric to inspect in Korea is far greater than for Plaintiffs to ship the products.

## III. PLAINTIFFS CANNOT DISREGARD PUBLIC POLICY CONCERNS

Finally, it is worth reiterating the slippery slope Plaintiffs ask this Court to establish for inspection. Plaintiffs concede it sent the products to Korea on its unilateral "preference" because it "opted to use that equipment" rather than hiring an entity in the United States for testing. Opp. at 2. This Court could set troubling precedent encouraging Plaintiffs to do the same, shifting the burden on infringement and defense thereof on Defendants who are at the whim of Plaintiffs and their own expense to see them. A sliding scale of wealth to distance is not in the interest of justice or prescribed anywhere in American jurisprudence. Plaintiffs chose to sue Feit Electric in this district, and should litigate accordingly. *See Iris Corp.*, 84 Fed. Cl. at 494. Should this Court endorse Plaintiffs' policy, every patentee will be able to increase litigation costs and uncertainty by relying on testing in foreign lands.

---

[4] Continuing their pattern of obfuscation, rely on the declaration of an individual ***not*** identified in their Rule 26 disclosures. *Compare* Dkt. 140-2 *with* Papacostas Decl., Exs. T, U. This Court therefore should disregard that declaration in its entirety. Moreover, Plaintiffs' Opposition fails to provide ***any*** indication of how long it took Plaintiffs to package the Accused Products for shipping ***from*** the various points of purchase in the United States ***to*** its offices in Seoul, despite Feit Electric raising this question in its Opening Letter Brief. *See* Dkt. 135 at 4 n.4.

Best regards,

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP

*/s/ Simeon G. Papacostas*

Simeon G. Papacostas

STRADLING YOCCA CARLSON
& RAUTH A PROFESSIONAL CORPORATION

*/s/ Salil Bali*

Salil Bali