SALIL BALI, State Bar No. 263001
  sbali@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: 949.725.4000
Facsimile: 949.725.4100

ZIYONG SEAN LI, State Bar No. 289696
  sli@beneschlaw.com
GREGORY C. PROCTOR, State Bar No. 311214
  gproctor@beneschlaw.com
HAYK SNKHCHYAN, State Bar No. 341698
  hsnkhchyan@beneschlaw.com
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828

KAL K. SHAH (admitted *pro hac vice*)
  kshah@beneschlaw.com
SIMEON G. PAPACOSTAS (admitted *pro hac vice*)
  spapacostas@beneschlaw.com
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
Facsimile: 312.767.9192

*Attorneys for Defendant, Feit Electric Co., Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEOUL SEMICONDUCTOR CO., LTD., and SEOUL VIOSYS CO., LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>FEIT ELECTRIC CO., INC.,<br><br>Defendant. | CASE NO. 2:22-cv-05097-AB-SHK<br><br>Honorable Andre Birotte Jr<br>Magistrate Shashi H. Kewalramani<br><br>**REDACTED MOTION TO ENFORCE THE COURT'S ORDER (DKT. 265) AND FOR SANCTIONS**<br><br>*FAC Filed: December 21, 2022* |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 6, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable André Birotte Jr., United States District Court Judge, located at 350 West First Street, Los Angeles, California, 90012, Courtroom 7B, Defendant, Feit Electric Co., Inc., will and hereby does move the Court for an order pursuant to FED. R. CIV. P. 26, 37(b)-(c), and this Court's inherent powers, to enforce the Court's prior order striking untimely produced documents (Dkt. 265) in their entirety for all purposes.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 26, 2024 between Feit Electric's counsel Gregory Proctor and Salil Bali and Plaintiffs' counsel Kevin Kudlac on the other. *See* concurrently filed Declaration of Gregory Proctor (the "Proctor Decl."), ¶ 2. The parties then engaged in an informal meeting with the Special Master to further discuss the issues raised herein. *Id.* Following the informal meeting, the parties exchanged multiple correspondence and met and conferred again on October 15, 2024. *See* Ex. DD.[1] The parties also held a hearing with the Special Master on this issue on October 1, 2024, and October 8, 2024. As such the parties have engaged in fulsome discussions of their positions to see if issues could be narrowed or resolved before raising them to the Court. As the parties were unable to resolve the disputes raised herein, they now bring them to the Court.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the October 25, 2024 Declaration of Gregory C. Proctor, with exhibits, and upon such other matters as may be presented to the Court in connection with this Motion and any other matter that the Court deems appropriate.

---

[1] Exhibits A - FF are attached to the concurrently filed Declaration of Gregory C. Proctor ("Proctor Decl.").

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................ 1

II.   BACKGROUND ......................................................... 3

      A.    This Court Already Excluded Plaintiffs' Untimely Production of
            Long-Sought Chain-of-Custody Information ...................... 4

      B.    Plaintiffs' Failure to Comply with the Court's Order.......... 5

            1.    Plaintiffs' Deficient September 5, 2024 Disclosure.......... 5

            2.    Plaintiffs' October 1, 2024 Disclosure Did Not Comply...... 11

      C.    Plaintiffs' Refusal to Withdraw Excluded Information.......... 15

III.  ARGUMENT ........................................................... 17

      A.    Legal Standards .............................................. 17

      B.    Exhibit 1 and the June Production Should be Stricken.......... 18

            1.    The Court Should Strike the June Production ............... 19

            2.    Plaintiffs Should be Precluded from Relying on Exhibit 1 to
                  their Amended Disclosure ................................. 21

      C.    Feit Electric Should not Have to Incur the Unnecessary Expenses
            Resulting from Plaintiffs' Conduct........................... 21

            1.    Attorneys' Fees Are Warranted Pursuant to Rule 37(b)(2)(C)
                  .......................................................... 22

            2.    Attorneys' Fees Are Warranted Pursuant to Section 1927.... 23

            3.    Attorneys' Fees Are Warranted Pursuant to the Court's
                  Inherent Powers ......................................... 24

      D.    This Court Already Ruled That Timely Resolution of this Issue is
            Appropriate ................................................. 25

IV.   CONCLUSION ......................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fair Hous. of Marin v. Combs*,
285 F.3d 899 (9th Cir. 2002) .......................................................................... 22

*Handloser v. HCL Am., Inc.*,
No. 19CV01242LHKVKD, 2020 WL 6205214 (N.D. Cal. Oct. 22, 2020) ... 23

*Harkey v. Beutler*,
817 F. Appx. 389 (9th Cir. 2020) ................................................................. 22

*Link v. Wabash R. Co.*,
370 U.S. 626 (1962) ....................................................................................... 18

*MGIC Indem. Corp. v. Moore*,
952 F.2d 1120 (9th Cir.1991) ........................................................................ 18

*Nat'l Org. for the Reform of Marijuana Laws v. Mullen*,
828 F.2d 536 (9th Cir. 1987) ........................................................................ 17

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,
210 F.3d 1112 (9th Cir. 2000) ...................................................................... 18

*Roadway Exp., Inc. v. Piper*,
447 U.S. 752 (1980) ....................................................................................... 18

*Sas v. Sawabeh Info. Servs.*,
No. CV114147MMMMANX, 2015 WL 12711646 (C.D. Cal. Feb. 6, 2015) 24

*Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*,
982 F.2d 36 (9th Cir. 1992) ........................................................................... 18

*United States v. Haymond*,
672 F.3d 948 (10th Cir.2012) ........................................................................ 19

*In re Verisign, Inc. Sec. Litig.*,
No. C 02-02270 JW, 2004 WL 2445243, at *3 (N.D. Cal. Mar. 10, 2004) .... 20

*Williams v. Sprint/United Mgmt. Co.*,
230 F.R.D. 640 (D. Kan. 2005) ..................................................................... 19

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ............................................................. 17

**Statutes**

28 U.S.C. § 1927 ................................................................... 17, 18, 23

**Other Authorities**

FED. R. CIV. P. 37(b)(2)(C) ............................................................. 17, 22

FED. R. CIV. P. 37(c)(1) ...................................................................... 17

Rule 26(e)(1) ..................................................................................... 17

Rule 37 ............................................................................................. 17

705 Fed. Appx. 640, 641 (9th Cir. 2017) ........................................... 17

§ II.B.1 ...................................................................................... 20, 21, 23

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iii-
MOTION TO ENFORCE THE COURTS ORDER AND FOR SANCTIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court made clear in its August 22, 2024 Order that Plaintiffs' untimely disclosure of information long-sought by Defendant Feit Electric Company, Inc. ("Feit Electric") both prejudiced Feit Electric and lacked justification, and therefore Plaintiffs could not use that information in this case. *See* Dkt. 265 ("the Order"). Yet nearly two months later, Plaintiffs continue trying to circumvent that order, admittedly attempting to reinsert previously stricken chain of custody information back into the case. Specifically, despite the Court striking spreadsheets and declarations relying on what Plaintiffs describe as "SSCxxxx nomenclature" to both track the chain of custody of their testing and analysis documents and correlate those documents to specific accused products, Plaintiffs now attempt to reinsert that very same information back into the case in two ways.

First, Plaintiffs expressly include this information on Exhibit 1 to Plaintiffs' October 1, 2024 Amended Disclosure[2] of Duplicate Bates Ranges (the "Amended Disclosure"). Plaintiffs ostensibly do so under the guise of attempting to comply with the directives of the Order. But that Order only required Plaintiffs to identify: (1) the Bates ranges of documents pertaining to products "***other than*** the 51 accused products,"[3] and (2) the Bates numbers of any documents in Plaintiffs' June 4, 2024 production ("the June Production") that Plaintiffs claim are merely duplicates of previously produced documents in their August 9, 2023 and April 4, 2024 productions. *See* Dkt. 265 at 12-13. Nothing in Exhibit 1 is responsive to either of those two mandates. Further, Plaintiffs' counsel has conceded that Exhibit 1 was "a mistake," ostensibly based on a "misunderstanding" of the

---

[2] Plaintiffs served an Amended Disclosure on October 1, 2024. As discussed in more detail below, Plaintiffs confirmed that their September 5, 2024 Disclosure of Duplicate Bates Ranges failed to comply with the Court's Order, and the Special Master allowed Plaintiffs to serve an Amended Disclosure.

[3] Unless otherwise indicated, all emphases are added.

STRADLING YOCCA CARLSON & RAUTH LAWYERS NEWPORT BEACH

MOTION TO ENFORCE THE COURTS ORDER AND FOR SANCTIONS

Court's clear directives. No justification exists for including Exhibit 1 in its disclosure, and Plaintiffs' refusal to agree to not rely on the information contained within that exhibit has forced Feit Electric to seek relief from this Court.

Second, while Plaintiffs represented to this Court that "substantially all" of the documents in the June Production were merely "duplicates" of documents they previously produced in their August 9, 2023 and April 4, 2024 productions, a closer look at the June Production reveals Plaintiffs' representation to be false. This is because Plaintiffs included new information in the metadata appended to the documents in their June Production comprising the same chain of custody information, *e.g.*, the "SSCxxxx nomenclature" that was stricken as untimely. That additional metadata was not produced with the so-called earlier "duplicates" Plaintiffs point to in their prior productions, and therefore under the Order, it should be stricken as well. As a general matter, Plaintiffs' insistence that they be allowed to rely on their June Production when they have already identified so-called "duplicate" documents in the prior productions makes little sense. But Plaintiffs made their intent clear when previously claiming the June Production was necessary "to allow for clearer correlation between the [stricken] declarations and the files described therein," *see* Dkt. 251 at 10, and later vaguely promising that, even without Exhibit 1, "[t]here are plenty of other ways that we can provide the same information to an expert without handing them that piece of -- that document." Ex. A at 30:17-19.

Indeed, Plaintiffs' positions simply cannot withstand common sense scrutiny. If Exhibit 1 truly was "a mistake" or "a misunderstanding," as Plaintiffs' counsel concedes, then why do Plaintiffs insist on including it in their disclosure? Similarly, if Plaintiffs already produced the so-called "duplicates" in prior productions, then why insist on using documents from the June Production? The parties have engaged in one round of briefing already, two hearings with the

Special Master, and several meet and confers, and yet Plaintiffs have conspicuously refrained from giving any plausible explanation for their positions.

It is important to recognize that Feit Electric's motion arises out of Plaintiffs' improper document dump, at and after the close of discovery, which tripled the page count of its production to date and belatedly proffered long-sought, purported chain of custody information. The Court found that conduct improper, and only granted concessions to Plaintiffs as to two subsets of documents based on Plaintiffs' misrepresentation that the June Production contained mere duplicates and that they "could quickly identify" those duplicates and documents relating to products other than the 51 accused products in the case. *See generally* Dkt. 265. Feit Electric should not have to continue expending resources over four months after raising this issue just to keep Plaintiffs within the bounds this Court's Order. Plaintiffs' lack of justification for their pattern of repeated non-compliance with Court orders, and indeed their prolonging of the instant dispute, merits striking Exhibit 1 and the June Production in its entirety. Plaintiffs' defiance of the Court Order has also unnecessarily multiplied the proceedings to the level that merits an award of reasonable attorneys' fees.

Plaintiffs' attempt to end-run around the Court's clear order should be rejected outright. Moreover, Plaintiffs' repeated and unnecessary multiplication of these proceedings due to their failure to adhere to the Court's orders warrant sanctions, including awarding attorneys' fees to Feit Electric.

## II.    BACKGROUND

On July 17, 2024, Feit Electric filed a Motion to Strike Late Produced Documents, seeking to strike Plaintiffs' untimely productions made on May 22, 2024, May 31, 2024, and the June Production. *See* Dkts. 245, 250, 257-1, 258. As this Court is familiar with the factual and procedural background leading up to that motion, *see generally* Dkt. 265, Feit Electric does not repeat it here, but rather

incorporates by reference the Factual and Procedural Background from the prior round of briefing on this issue. *See* Dkt. 250 at 2-17.

**A.    This Court Already Excluded Plaintiffs' Untimely Production of Long-Sought Chain-of-Custody Information**

On August 22, 2024, this Court granted Feit Electric's Motion to Strike Plaintiffs' May 22, 2024 and May 31, 2024 productions in their entirety. *See* Dkt. 265 at 16. The Court based its ruling on its express findings that these productions were untimely, prejudicial, and without substantial justification. *Id*. at 7-12. On that same basis, the Court also granted Feit Electric's motion to strike the June Production as to "newly produced documents relating to accused products in the June Production, including the 2022-2023 declarations." *Id*. at 12-15.

While the Court granted Feit Electric's motion generally as to information produced for the first time at or after the close of discovery, the Court deemed Feit Electric's motion moot "as to documents within the June Production relating to no-longer-accused products and duplicate documents." *See id*. In lieu of striking those documents, the Court instead ordered Plaintiffs to provide two disclosures: (1) "a list of Bates ranges for documents in the June Production relating to products other than the 51 accused products," and (2) "a list of Bates ranges for documents in the June Production that are duplicative of documents previously produced, along with cross-reference Bates numbers to the original production Bates numbers." *Id*. at 12-13. According to the Court, the purpose of the first mandate was to allow Feit Electric to "quickly identify the non-relevant documents on which SSC agreed it does not intend to rely given the case narrowing order." *Id*. at 13. As to the second mandate regarding duplicates, the Court took Plaintiffs at their word that they "could quickly identify the duplicates

1    based on metadata," and found that Plaintiffs' identification of duplicates would
2    render Feit Electric's motion moot as to these documents. *Id*. [4]

3        The Court based its finding of mootness regarding the purported
4    "duplicates" on Plaintiffs' express representations that the documents were
5    "duplicative to prior productions." *See id.* at 3 (citing Dkt. 251 at 9); *see also id*.
6    at 12-13 ("[T]he June Production includes re-produced documents relating to the
7    51 accused products remaining in the case, *i.e.*, they are duplicates. SSC states
8    that duplicates were provided to link specific documents to their corresponding
9    authenticating declarations."); *see also* Dkt. 251-1, ¶ 64 ("Based on information
10   received from SSC and my analysis of these files and the files previously
11   produced in June 2023 and April 2024, substantially all of the 8100 documents
12   referenced in the paragraph appear to have been previously produced in one or
13   both of the June 2023 and April 2024 productions."). But as discussed below,
14   those representations would prove to be false.

15       **B.    Plaintiffs' Failure to Comply with the Court's Order**

16           **1.    Plaintiffs' Deficient September 5, 2024 Disclosure**

17       On September 5, 2024, Plaintiffs served their Disclosure of Duplicative
18   Bates Ranges Pursuant to Dkt. 265 (the "September 5 Disclosure"), which
19   included a cover document and three exhibits. *See* Exs. B-E. Plaintiffs explained
20   in the cover document that "Exhibit 1 hereto includes the bates ranges from
21   Plaintiffs' document productions of August 9, 2023 and April 4, 2024 which
22   include duplicates of files produced on June 4, 2024 and the corresponding bates
23   ranges for the June 4, 2024 production." *See* Ex. B. Plaintiffs further explained
24   that "Exhibits 2 and 3 hereto contain an identification of the specific duplicate
25   files/documents from the August 9, 2023 production as compared to the June 4,

26   _____
27   [4] The Special Master confirmed that allowing Plaintiffs to provide these two lists
     in lieu of striking those categories of documents "was so both parties can know
     what the universe of discovery information is." Ex. A at 12:6-9; *see also id*. at
28   11:13-12:2, 27:5-12.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1    2024 production (Exhibit 2) and the April 4, 2024 production as compared to the

2    June 4, 2024 production (Exhibit 3)." *Id*. But Plaintiffs' descriptions omitted key

3    aspects of their disclosure.

4        For example, Plaintiffs were tasked with identifying the "Bates ranges for

5    documents in the June Production relating to products ***other than*** the 51 accused

6    products," and with identifying the so-called duplicates from the June Production

7    that Plaintiffs represented had been previously produced in their August 9, 2023

8    and April 4, 2024 productions. *See* Dkt. 265 at 12-13. But in their September 5

9    Disclosure, rather than identifying documents relating to products "other than the

10   51 accused products" as ordered by the Court, Exhibit 1 does the exact opposite,

11   purporting to correlate Bates ranges on a product-by-product basis only for the 51

12   accused products remaining in the case, as shown in the below excerpt:

| Accused Product | SSCxxxx | August 9, 2023 Begin Bates | August 9, 2023 End Bates | April 4, 2024 Begin Bates | April 4, 2024 End Bates | June 4, 2024 Begin Bates | June 4, 2024 End Bates |
|---|---|---|---|---|---|---|---|
| G3060/RGBW/FIL/AG | SSC_0002 | SSC_FEIT00037906 | SSC_FEIT00037955 | SSC_FEIT00056107 | SSC_FEIT00056224 | SSC_FEIT00165912 | SSC_FEIT00166896 |
| LEDR4/RGBW/AG | SSC_0003 | SSC_FEIT00037956 | SSC_FEIT00038078 | SSC_FEIT00056225 | SSC_FEIT00056390 | SSC_FEIT00166906 | SSC_FEIT00168951 |
| A800/827/10KLED/2 | SSC_0005 | SSC_FEIT00038228 | SSC_FEIT00038300 | SSC_FEIT00056426 | SSC_FEIT00056475 | SSC_FEIT00169001 | SSC_FEIT00169390 |
| TS48/850/B/LED/2 | SSC_0007 | SSC_FEIT00038333 | SSC_FEIT00038370 | SSC_FEIT00056596 | SSC_FEIT00056744 | SSC_FEIT00169510 | SSC_FEIT00169704 |
| LEDR4B/950CA/MP/6 | SSC_0008 | SSC_FEIT00038371 | SSC_FEIT00038486 | SSC_FEIT00056745 | SSC_FEIT00056928 | SSC_FEIT00169705 | SSC_FEIT00170144 |
| LEDR4HO/6WYCA | SSC_0009 | SSC_FEIT00038487 | SSC_FEIT00038522 | SSC_FEIT00056929 | SSC_FEIT00056988 | SSC_FEIT00170145 | SSC_FEIT00170208 |

15   Ex. C.[5] And while Plaintiffs described Exhibit 1 as "includ[ing] the bates ranges

16   from Plaintiffs' document productions of August 9, 2023 and April 4, 2024 ***which***

17   ***include duplicates*** of files produced on June 4, 2024 ***and the corresponding bates***

18   ***ranges*** for the June 4, 2024 production," *see* Ex. B, Feit Electric's review of the

19   documents found that not all documents contained within the Bates range for the

20   June Production listed on Exhibit 1 have corresponding so-called "duplicates"[6] in

21   the prior productions—i.e., there exist documents within the Bates ranges in

22   Exhibit 1 that were produced for the first time in the June Production. *See* Ex. F.

---

23   [5] The first column of Exhibit 1 is titled "Accused Product" and only lists the 51

24   products remaining in this case, *e.g.*, Model Nos. G3060/RGBW/FIL/AG,

25   LEDR4/RGBW/AG,     A800/827/10KLED/2,     LEDR4B/950CA/MP/6, LEDR4HO/6WYCA, and so on. *Compare id. with* Dkt. 179-2.

26   [6] Although Plaintiffs represented that the June Production contained mere

27   "duplicates," the documents identified as "duplicates" in the June Production

28   contained additional chain-of-custody information in their metadata that was not previously produced.

Exhibit 1 also contains a second column titled, "SSCxxxx," provided without any accompanying explanation in the cover document to Plaintiffs' disclosure. *See* Ex. C. This column also is not responsive to any part of the Court's order. Instead, as Plaintiffs confirmed in their prior briefing, that column refers to information that was already excluded by this Court. *Compare, e.g.*, Dkt. 251 at 10 ("[T]he test/analysis documents and files are organized in SSC's files by folders bearing an identifier in the form of SSCxxxx (where xxxx is a serial number used to identify a particular accused product). ***Indeed this SSCxxxx nomenclature can even be seen in the very first column of the excerpt of the Master Spreadsheet …***") *with* Dkt. 265 at 7-10 ("In view of the belated disclosure of the spreadsheets, and SSC's failure to demonstrate substantial justification for their withholding or lack of prejudice flowing therefrom, ***the Court grants Feit Electric's motion as to the spreadsheets***.").

*See, e.g.*, Dkt. 244-14 at Exhibit A. The Court struck Plaintiffs' belated production of these declarations containing purported chain of custody information on the same basis as the now excluded spreadsheets. *See* 265 at 10-12. That is, Exhibit 1 contains additional information that was not only never contemplated by the Court's order, but expressly stricken.

The remaining two exhibits to Plaintiffs' September 5 Disclosure, Exhibit 2 and Exhibit 3, also do not identify the "Bates ranges for documents in the June Production relating to products ***other than*** the 51 accused products," as the Court ordered. As Feit Electric noted to Plaintiffs, while Exhibits 2 and 3 merely purport

-7-

to identify so-called "duplicates," Plaintiffs did not differentiate in those exhibits between claimed duplicate documents pertaining to the 51 accused products remaining in the case and those pertaining to products other than those 51 accused products. *See* Exs. D, E, F. Plaintiffs' identification of purported "duplicates" on Exhibits 2 and 3 also appeared inconsistent with the Plaintiffs' representations of "duplicates" listed on Exhibit 1. *See* Ex. F.

On September 19, 2024, having discovered numerous deficiencies in Plaintiffs' disclosure, counsel for Feit Electric wrote to Plaintiffs seeking a meet and confer specifically to discuss Exhibit 1, and to clarify Feit Electric's understanding of the entirety of Plaintiffs' unclear disclosure. *See* Ex. F. Feit Electric described several exemplary deficiencies in detail. *See id*. On September 20, 2024, Feit Electric also filed a formal objection to Plaintiffs' Notice of Compliance, identifying for the Court exemplary deficiencies, indicating that its review of Plaintiffs' over-400 page disclosure was ongoing, and reserving its right to make further challenges to that disclosure. *See* Dkt. 273.

On September 24, 2024, Plaintiffs' counsel responded to Feit Electric, stating only that, "I will not respond to you[r] accusations of impropriety or of purported failures," and that "Plaintiffs believe they have complied with the Court's order." *See* Ex. G. Nevertheless, Plaintiffs offered to meet and confer, and to "revisit the information included in the charts," presumably Exhibits 1-3, "to see if there are any errors and, if so, correct them." *Id*. On September 25, 2024, Feit Electric responded and requested that, during the parties' meet and confer, Plaintiffs "provide a comprehensive a comprehensive response either confirming the failure to comply or explaining how it purportedly did comply." Ex. H. That same day, Feit Electric informed the Special Master of the status of the ongoing dispute, the parties' plan to meet and confer, and of the potential need for an expedited briefing schedule. *See* Ex. I.

On September 26, 2024, the parties held a meet-and-confer to discuss the issues raised in Feit Electric's September 19, 2024 email. *See* Proctor Decl., ¶ 2. During that meet and confer, Plaintiffs' counsel stated that Exhibit 1 was not meant to include a one-to-one overlap of duplicate documents and that the Bates ranges for the June Production listed on Exhibit 1 also included documents that Plaintiffs knew were not duplicates of previously produced documents. *Id.* Plaintiffs further committed to providing an additional disclosure of Bates ranges of documents relating to products other than the 51 accused products but refused to withdraw Exhibit 1 from their disclosure. *Id.* Because the parties remained at an impasse, Feit Electric requested a hearing before the Special Master. *See* Ex. J.

On October 1, the parties held a hearing before the Special Master to discuss Plaintiffs' noncompliance with the Court's Order and a potential briefing schedule for motion practice. During the hearing, when Feit Electric pointed out the inconsistent characterizations of Exhibit 1 in the cover document of Plaintiffs September 5 Disclosure and Plaintiffs' counsel's alternate description during the parties' meet and confer, counsel conceded that the Bates range listed for the June Production for any given product does not, in fact, "correspond" to duplicates of those documents in either of the previous productions:

> [COUNSEL]: . . . The cover document does not say that those ranges only include duplicates. It doesn't say that. . . . It says, these are the Bates ranges that include duplicates. . . . I didn't say these are the Bates ranges and every single document, every Bates label within them is a duplicate.

Ex. A at 17:9-21. Notably, Plaintiffs' counsel admitted that the express purpose of Exhibit 1 was to provide previously stricken chain of custody information:

> [COUNSEL]: Exhibit 1 was simply meant to provide an identification of the products still at issue, the SSC XXX [sic] number that corresponds to the productions. You may remember this from the

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1  briefing. And then from each of the three productions, the Bates ranges

2  that were identified as within the scope of that SSC XXX [sic] item.

3  *Id*. at 10:4-10. Plaintiffs' counsel also conceded that despite the Order clearly

4  requiring Plaintiffs "to provide a list of Bates ranges for documents in the June

5  Production relating to products other than the 51 accused products," Dkt. 265 at

6  12-13, that counsel "made a mistake in not doing that." *See* Ex. A at 18:11-14

7  ("To the extent that we did not specifically identify the Bates ranges for products

8  no longer accused, I have done my very best to explain that ***I made a mistake in***

9  ***not doing that***."); *see also id.* at 18:14-17 ("I misinterpreted, misunderstood the

10 order because ***I believe we were supposed to be identifying the documents that***

11 ***were related to the products that were still at issue***."). Plaintiffs' counsel then

12 represented that they would amend their disclosure in an attempt to bring their

13 disclosure into compliance by the end of the day. *See id*. at 18:18-21.

14      Notably, in response to Feit Electric's concerns about the inclusion of

15 clearly stricken information in Exhibit 1, the Special Master remarked that

16 "Exhibit 1 is not evidence of anything," and that "[t]here could be no sponsoring

17 witness." *See id*. at 20:23-26:18. But when asked if Plaintiffs would nevertheless

18 be using the information contained in Exhibit 1, Plaintiffs' counsel chose his

19 words carefully, stating only that, "I will not be a sponsoring witness of Exhibit 1

20 at any trial in this case" and "there was not an intent to create evidence for use at

21 trial." *Id*. at 30:4-12. But counsel conspicuously refused to commit to not using

22 the belated and untimely information contained ***within*** the exhibit, vaguely stating

23 without further explanation that "[t]here are plenty of other ways that we can

24 provide ***the same information*** to an expert without handing them that piece of --

25 that document." *Id*. at 30:17-19.

26      Based on Plaintiffs' promise to amend their disclosure by the end of the

27 day, the Special Master recommended that the parties hold another hearing after

28 Feit Electric reviewed the promised amendment. *See Id*. at 30:25-33:2.

**2.    Plaintiffs' October 1, 2024 Disclosure Did Not Comply**

On the evening of October 1, 2024, Plaintiffs served their Amended Disclosure of Duplicate Bates Ranges Pursuant to Dkt. 265 ("the Amended Disclosure"). In their Amended Disclosure, Plaintiffs included an amended version of previously-served Exhibit 1, the previously served Exhibits 2-3, and a new Exhibit 4, which Plaintiffs described in their amended cover document as "contain[ing] an explicit identification of bates ranges from the June 4, 2024 production that relate to products other than the remaining 51 accused products as referenced in the final paragraph of page 12 and first paragraph of page 13 of Dkt. 265." *See* Ex. K. Even as amended, Exhibit 1 remained largely unchanged in substance, as it still purports to correlate individual accused products to not only the Bates ranges of Plaintiffs' production, but also to the "SSCxxxx" file structure nomenclature information already stricken by this Court. *See* Ex. L.

Moreover, after reviewing Plaintiffs' Amended Disclosures with the benefit of Plaintiffs' additional explanations during the parties' September 26, 2024 meet and confer and subsequent October 1, 2024 hearing with the Special Master, Feit Electric discovered that Plaintiffs' prior representation that the June Production merely contained "duplicates" to be false. Specifically, the alleged "duplicates" in Plaintiffs' June Production contain additional information in the accompanying metadata relating to the "SSCxxxx" file structure that (1) was not previously contained in the previously produced files from the April 4, 2024 and August 9, 2023 productions; and (2) comprises the same information that was deemed untimely and stricken by this Court in its Order.

1    For example, according to Exhibit 2 of Plaintiffs' Amended Disclosure, the

2    document beginning with Bates number SSC_FEIT00169517 from the June

3    Production is merely a "duplicate" of the document bearing Bates number

4    SSC_FEIT00038080 from the August 9, 2023 production. *See* Ex. M at 4. But

5    SSC_FEIT00169517 contains additional metadata provided only with the June

6    Production, most notably a field titled, "File Path." The below image shows the

7    metadata produced for this document in the June Production:

8

9

10

11

12

13

14

15

16

17

18    Ex. P.

19    As shown above, the later-produced SSC_ FEIT00169517 contains a

20    metadata field titled, "File Path." This File Path field is populated by directory

21    information that includes the "SSCxxxx nomenclature" discussed above, i.e.,

22

23

24

25    *See id.* (bold/underline added).

26

27

28

By contrast, the allegedly corresponding "duplicate" from Plaintiffs' August 9, 2023 production, i.e., SSC_FEIT00038080, contains no such information in its metadata:

See Ex. Q.

As another example, SSC_FEIT00179002, produced in the June Production, contains File Path information not produced with its previously-produced duplicate according to Exhibit 2 of Plaintiffs' Amended Disclosure, found at SSC_FEIT00040971. Unlike the earlier-produced document SSC_FEIT00040971, the later-produced document SSC_FEIT00179002 includes metadata for the "File Path" field, populated with the following:

See Ex. R (bold/underlined added).

The same is true for Exhibit 3 to Plaintiffs' Amended Disclosure, which represents, for example, that the document beginning with Bates number SSC_FEIT00171298 from the June Production is merely a "duplicate" of the document beginning with Bates number SSC_FEIT00058235 from the April 4, 2024 production. But just like the previous examples, SSC_FEIT00171298 also contains "File Path" information not provided with the previously-produced SSC_FEIT0058235. The below image shows the metadata produced for SSC_FEIT00171298, produced in the June Production:



*See* Ex. S. But again, the previously produced alleged "duplicate" document form the April 4, 2024 production, SSC_FEIT00058235, was not produced with this metadata field or accompanying information:

MOTION TO ENFORCE THE COURTS ORDER AND FOR SANCTIONS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

*See* Ex. T. This is not the only example on Exhibit 3. *Compare, e.g.*, Ex. U *with* Ex. V. In fact, none of the alleged duplicates from the August 9, 2023 and April 4, 2024 productions that Feit Electric reviewed were produced with a "File Path" field in their accompanying metadata, let alone the "SSCxxxx nomenclature" information that Plaintiffs included in their untimely June Production.

### C.    Plaintiffs' Refusal to Withdraw Excluded Information

On October 4, 2024, Feit Electric sent an email to Plaintiffs and the Special Master, maintaining Feit Electric's objection to Plaintiffs' Amended Disclosure and outlining the bases for its objection. *See* Ex. W. In this email, Feit Electric informed the Special Master of its discovery that "Plaintiffs' claim that the June 4, 2024 production consists of 'duplicates' is demonstrably false." *Id*. On October 7, 2024, the Special Master responded and invited the parties "to have a follow up Zoom conference continuing our discussion from last week, now updated by the amended disclosures." *See* Ex. X.

On October 8, 2024, the parties held a second hearing with the Special Master to outline their dispute. During that hearing, the Special Master confirmed that as to amended Exhibit 1, "it does have some columns that were derived from information that was in the tracking sheet and master sheet, and so obviously the -- the August order that you referenced would control." *See* Ex. Y at 8:2-23. The Special Master then suggested that the parties meet and confer and attempt to resolve the dispute via stipulation. On October 9, 2024, Defendant wrote to Plaintiffs and provided a detailed description of the specific deficiencies still present in the Amended Disclosure, with multiple examples. *See* Ex. Z. Defendant also attached a proposed stipulation, seeking Plaintiffs' agreement that they would not rely on Exhibit 1 or any of the information contained therein, nor would they rely on any documents in the June Production that Plaintiffs contended were merely duplicates of previously produced documents but which contained

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MOTION TO ENFORCE THE COURTS ORDER AND FOR SANCTIONS

metadata not produced earlier in the case. Feit Electric requested a prompt meet and confer on these issues.

On October 10, 2024, Plaintiffs responded by stating that they were waiting for input from an attorney that was currently unavailable. *See* Ex. CC. That same day, Feit Electric responded to note the exigency of the issue and further to point out that resolution would not require any specialized knowledge, such that "one of the numerous attorneys that one of the numerous attorneys that have made appearances in this case" on behalf of Plaintiffs should "be capable of addressing this issue." *See id*. On October 14, 2024, Plaintiffs responded by disagreeing that they failed to comply with the Court's order, stating that the Court's order "in no way was directed to file path metadata" and that "[t]here is no exigency here," but agreed to meet and confer the next day. *See* Ex. AA. On October 15, 2024, thirty minutes before the parties' planned meet and confer, Plaintiffs provided revisions to Feit Electric's draft stipulation. *See* Ex. BB. The parties held a meet and confer that same day, during which the parties discussed each others' proposals, with Feit Electric agreeing to provide a response to Plaintiffs' most recent proposal.

On October 18, 2024, Feit Electric provided a revised proposed stipulation based on the parties' discussion, in which Feit Electric "clarified the language regarding Exhibit 1 to make clear that we were not seeking to preclude Plaintiffs from relying on documents found within the listed Bates ranges (unless those documents were already deemed stricken)." *See* Ex. DD. Feit Electric also rejected provisions it deemed ancillary to the parties' dispute. *See id*. Feit Electric requested that Plaintiffs provide their response by October 21, 2024. On October 23, 2024, Plaintiffs responded with a "revised" stipulation that mirrored Plaintiffs' prior revision verbatim. *Compare, e.g.*, Ex. BB *with* Ex. EE. On October 25, 2024, Feit Electric rejected those revisions, noting that "Plaintiffs' latest revisions appear to mirror Plaintiffs' October 15, 2024 revisions which we previously indicated we would not agree to" and that the parties were at an impasse. Ex. FF.

-16-

1    **III.   ARGUMENT**

2        **A.      Legal Standards**

3        The Court possesses the power to take requisite actions "necessary or

4    appropriate to effectuate and prevent the frustration of orders it has previously

5    issued." *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536,

6    544 (9th Cir. 1987) (citing *United States v. New York Tel. Co.*, 434 U.S. 159, 172

7    (1977)). As this Court has already recognized, "Rule 37 mandates that a party's

8    failure to comply with the obligations under Rule 26(e)(1) results in that party

9    being precluded from 'use [of] that information . . . to supply evidence on a

10   motion, at a hearing, or at a trial, unless the failure was substantially justified or

11   is harmless." Dkt. 265 at 4-5 (quoting *Jones v. Travelers Cas. Ins. Co. of Am.*, 304

12   F.R.D. 677, 678–79); Fᴇᴅ. R. Cɪᴠ. P. 37(c)(1); *see also Silver State Broad., LLC*,

13   705 Fed. Appx. 640, 641 (9th Cir. 2017) (recognizing that Rule 37(c)(1) operates

14   as "an automatic exclusion sanction for violations" and noting that "[defendant]

15   did not need to move to compel disclosure before seeking sanctions"); *Yeti by*

16   *Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)

17   (emphasizing that courts "have upheld the use of the sanction even when a

18   litigant's entire cause of action or defense has been precluded"). "Rule 37(c)(1) is

19   'self-executing' and 'automatic.'" *Id.* (quoting *Yeti by Molly Ltd v. Deckers*

20   *Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).

21       Rule 37 also mandates the imposition of "reasonable expenses, including

22   attorney's fees, caused by the failure" to comply with a discovery order. Fᴇᴅ. R.

23   Cɪᴠ. P. 37(b)(2)(C). Under Rule 37, the Court "must order" the payment of

24   reasonable expenses by the disobedient party "unless the failure was substantially

25   justified or other circumstances make an award of expenses unjust." *Id.* Under

26   Section 1927, the Court may require any attorney "who so multiplies the

27   proceedings in any case unreasonably and vexatiously" to pay "the excess costs,

28   expenses, and attorneys' fees reasonably incurred because of such conduct." 28

U.S.C. § 1927. The imposition of sanctions under section 1927 "requires a finding of bad faith." *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). An attorney's bad faith is assessed under a subjective standard, meaning that "[k]nowing or reckless conduct meets this standard." *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1121–22 (9th Cir.1991). Finally, district courts have inherent powers to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 36, 368 (9th Cir. 1992). These inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962). Pursuant to these inherent powers, district courts may impose sanctions, including attorneys' fees, for the "willful disobedience of a court order" *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980).

**B.    Exhibit 1 and the June Production Should be Stricken**

During the Parties' October 8, 2024 hearing, the Special Master accurately described the relevant inquiry as whether there is "information that was stricken previously that has somehow made its way back into the record in more than just a simple cataloging way for attorney purposes, not for evidentiary purposes, and if so, what, if anything needs to be done about it?" Ex. Y at 14:4-8. The answer to this question is straightforward and governed by the Court's order. The information in Exhibit 1 and within the metadata of the documents in Plaintiffs' June Production is information that was already stricken—and it should not be reintroduced.

In light of the additional information associated with the so-called "duplicates" in the June Production, the Court should follow the reasoning of its Order and strike the entire June Production. Similarly, no reason exists for Plaintiffs' provision of Exhibit 1—it is not responsive to the Court's Order and it

includes information that was already stricken. Plaintiffs' refusal to agree to not rely on the information contained within Exhibit 1 is untenable.

### 1.    The Court Should Strike the June Production

Metadata, commonly defined as "data about data", is "information describing the history, tracking, or management of an electronic document." *Williams v. Sprint/United Mgmt. Co.,* 230 F.R.D. 640, 646 (D. Kan. 2005). It includes "all of the contextual, processing, and use information needed to identify and certify the scope, authenticity, and integrity of active or archival electronic information or records." *Id.* (citation omitted); *United States v. Haymond,* 672 F.3d 948, 952 n. 10 (10th Cir.2012) ("Metadata, which is commonly described as 'data about data,' is defined as [s]econdary data that organize, manage, and facilitate the use and understanding of primary data.") (alteration in original). Critically, "if the producing party knows or should reasonably know that particular metadata is relevant to the dispute, it should be produced." *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 654 (D. Kan. 2005) (citing *The Sedona Principles,* Cmt. 12.a.).

Plaintiffs' refusal to agree to not rely on documents in its June Production, while simultaneously maintaining that there are "duplicates" of those same documents in its previous August 9, 2023 and April 4, 2024 productions makes no sense, and gives the game away. If the documents are merely duplicates, then why can Plaintiffs not rely on the earlier-produced versions? Plaintiffs have no answer, because their premise is false. Indeed, Plaintiffs have conceded the reason for maintaining their position is that they intend to use the "SSCxxxx nomenclature" in the metadata. *See, e.g.*, Ex. A at 30:17-19 ("There are plenty of other ways that we can provide the same information to an expert without handing them that piece of – that document."); Ex. AA (asserting that the Court's Order "in no way was directed to file path metadata").

But there is no dispute that the documents Plaintiffs identify as "duplicates" in their June Production contain the "SSCxxxx nomenclature" that the Court has already deemed stricken. Nor can there be any question that this constitutes additional information not present in the so-called "duplicates" in Plaintiffs' prior production. That information was ***newly produced*** as part of the June Production. Therefore, they are not duplicates. Accordingly, under the Court's reasoning in its August 22, 2024 Order, Plaintiffs should not be allowed to utilize this information for any reason in this case. *See* Dkt. 265 at 7 ("Although the spreadsheets were produced before the final deadline, they were not timely produced in connection with (1) Feit Electric's requests for discovery concerning the chain of custody of, and substance surrounding, product testing, and (2) the relevant 30(b)(6) deposition on May 1, 2024."), 10-11 ("The fact that the declarations were drafted and signed after the relevant testing/chain of custody deposition suggests they were intended to supply additional information to bolster SSC's testing procedures and/or results . . ."), 12-15 (striking "newly produced documents relating to accused products in the June Production").

Moreover, Plaintiffs conceded that the purpose of this additional information is to help Plaintiffs prove authenticity of previously produced documents. *See supra*, § II.B.1. This is a clear attempt at an end-run around this Court's Order. This Court has already held that "if SSC had information . . . to support authenticity and reliability of its testing, it was required to produce that information to Feit Electric with time to explore it during (not after) discovery," and that "[i]t would be unfair to run the clock on discovery and serve documents seeking to rebut challenges raised during discovery only after the close of discovery." *See* Dkt. 265 at 15; *see also In re Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2004 WL 2445243, at *3 (N.D. Cal. Mar. 10, 2004) ("Defendants have been on notice of the document requests since August 4, 2003, and they cannot

now argue that a series of recent Court orders, prompted by their own noncompliance, are solely at fault for their now inconvenient predicament.").

Plaintiffs' representations that the June Production largely contained "duplicates" of documents already produced is therefore false. The Court relied on those representations when declining to strike the subset of alleged "duplicates"—notably which Plaintiffs had not yet identified. Plaintiffs should not be able to benefit from their misrepresentations.

### 2. Plaintiffs Should be Precluded from Relying on Exhibit 1 to their Amended Disclosure

Plaintiffs have represented that they do not intend to offer Exhibit 1, itself, into evidence. *See supra*, § II.B.1. And while Plaintiffs have thus far refused to agree that they will not use the information contained within Exhibit 1, the Special Master has stated that the Court's Order "obviously" controls as to the "columns that were derived from information that was in the tracking sheet and master sheet," i.e., the columns correlating Plaintiffs' testing and analysis results on a product-by-product basis for the first time despite this information being long-sought. *See* Ex. Y at 8:2-23. Exhibit 1 does not respond to either category of documents that the Court ordered Plaintiffs to produce to Feit Electric. However, given Plaintiffs' refusal to withdraw the exhibit, Feit Electric requests, out of an abundance of caution, that the Court formally preclude Plaintiffs from relying on Exhibit 1—***and the information contained therein***—for any purpose in this case.

### C. Feit Electric Should not Have to Incur the Unnecessary Expenses Resulting from Plaintiffs' Conduct

Plaintiffs' continued refusal to honor this Court's Order has unnecessarily driven up litigation costs by forcing Feit Electric to undertake significant time and effort not only to review what should have been a straightforward and simple disclosure, but to hold Plaintiffs to the law of the case. Plaintiffs' continued and

repeated defiance of the Court's rulings in this case[7] has been highly prejudicial—forcing Feit Electric to undertake unnecessary and significant expenses in the midst of claim construction briefing and argument no less—and lacks any justification. Feit Electric should not be responsible for the costs arising out of Plaintiffs' failure to comply with the Court's Order two times—first via its admittedly noncompliant September 5 Disclosure, and again with their Amended Disclosure after the Special Master granted them a second chance.

### 1. Attorneys' Fees Are Warranted Pursuant to Rule 37(b)(2)(C)

Feit Electric is entitled to the reasonable expenses incurred in preparing and filing both the instant motion and the original Motion to Strike on this issue. FED. R. CIV. P. 37(b)(2)(C). As an initial matter, Plaintiffs' misrepresentations to the Court that documents in the June 4 production largely contained "duplicates" of previously produced documents constitutes grounds for imposing sanctions against Plaintiff. *See Harkey v. Beutler*, 817 F. Appx. 389, 392 (9th Cir. 2020) (awarding attorneys' fees based on "disobedience of court orders and his misrepresentations to the court"); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (awarding attorneys' fee where the party made material misrepresentations to the district court and counsel regarding discovery).

Plaintiffs must also bear the cost of forcing Feit Electric into motion practice just to enforce the Court's Order. As discussed above, Plaintiffs repeatedly failed to comply with the two straightforward mandates of the Court Order. Even now, Plaintiffs continue to improperly insist on introducing chain of custody information into the case under the guise of compliance. No circumstances exist that make an award of expenses unjust.

---

[7] This is not the first time Plaintiffs defied or outright ignored a Court order, forcing Feit Electric to undergo motion practice just to obtain the relief to which it was already entitled. *See, e.g.*, Dkt. 124, 148, 157, 207.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MOTION TO ENFORCE THE COURTS ORDER AND FOR SANCTIONS

**2.      Attorneys' Fees Are Warranted Pursuant to Section 1927**

In addition, payment of attorneys' fees pursuant to Section 1927 is justified in this specific instance, given that Plaintiffs' dilatory and evasive behavior has clearly multiplied the proceedings in this case. Plaintiffs, through their counsel, misrepresented the nature of the June Production to the Court by misrepresenting the documents in that production as mere "duplicates" of previously produced documents. *See, e.g.*, Dkt. 251-1, ¶ 64 ("Based on information received from SSC ***and my analysis of these files and the files previously produced*** in June 2023 and April 2024, substantially all of the 8100 documents referenced in the paragraph appear to have been previously produced in one or both of the June 2023 and April 2024 productions."). As noted above, the Court expressly based its findings of mootness regarding the so-called "duplicates" on Plaintiffs' representations. *See* Dkt. 265 at 12-13. Those misrepresentations resulted in Feit Electric unnecessarily expanding resources to conduct extensive analysis on these purported duplicates in order to reveal the true nature of Plaintiffs' productions. No reasonable explanation for these omissions by Plaintiffs exists other than to attempt an end run around the Court's order by improperly reintroducing chain of custody information previously stricken by the Court. Plaintiffs have, in fact, conceded this. *See supra*, § II.B.1.

Plaintiffs' counsel's actions unnecessarily multiplied the proceedings in this case by at least the instant motion. Plaintiffs' attorney must have known that its representations to this Court regarding the nature of the June Production contained material omissions, at best. *See, e.g.*, Dkt. 251-1, ¶ 64. But even if Plaintiffs claim they had no knowledge that the documents contained additional metadata, their failure to remedy these issues after Feit Electric provided contradictory facts demonstrates sufficient knowledge and reckless conduct to warrant sanctions. *See Handloser v. HCL Am., Inc.*, No. 19CV01242LHKVKD, 2020 WL 6205214, at *5 (N.D. Cal. Oct. 22, 2020) (awarding attorneys' fees

1  where counsel failed to correct mistakes once placed on notice and where such

2  failure necessitated further proceedings before the court).

### 3.    Attorneys' Fees Are Warranted Pursuant to the Court's Inherent Powers

The Court should also exercise its inherent power to award Feit Electric the reasonable expenses incurred in preparing and filing the instant motion. Plaintiffs made material misrepresentations to this Court to obtain a more favorable ruling and then twice failed to comply with the mandates of that Court Order. Next, Plaintiffs attempted to utilize Exhibit 1 to reintroduce chain of custody information previously stricken by the Court. This pattern of conduct demonstrates Plaintiffs' disregard for the rules and orders of this Court, and allowing it to continue would only encourage gamesmanship.

Plaintiffs have long been on notice that such conduct, particularly in the context of compliance with this Court's orders, would not be tolerated. *See, e.g.*, Dkt. 177-20 at 6:15-16 ("THE COURT: I just want to make sure I understand that we're clear because I think you're playing games here."); *see also* Dkt. Nos. 124, 148, 207, 240. Moreover, this Court has also previously found Plaintiffs' claims they misunderstood the Court's directives to be suspect. *See, e.g.*, Dkt. 207 at 9 ("[T]he Court disagrees with the contention that Plaintiffs did not know what was required to assert representativeness, or that Plaintiffs were doing something other than allege representativeness."). Notably, this Court has made clear that "in considering whether to impose sanctions, a district court may consider all of the disobeying party's discovery misconduct." *Sas v. Sawabeh Info. Servs.*, No. CV114147MMMMANX, 2015 WL 12711646, at *7 (C.D. Cal. Feb. 6, 2015) (citing *Payne v. Exxon*, 121 F.3d at 508).

D.    **This Court Already Ruled That Timely Resolution of this Issue is Appropriate**

Finally, Plaintiffs have questioned the urgency of resolving the scope of discovery. *See, e.g.*, Ex. AA. But as explained to Plaintiffs, the Court has already ruled on timing, and found that resolving the issue of the scope of Plaintiffs' discovery ***before*** expert discovery and dispositive motion practice to be proper:

> The Court finds that ***considering the motion now will lead to a more efficient use of Court and party resources because the scope of the case will be known through expert discovery and dispositive motion practice***. This will allow the parties to focus on matters that are within the case when completing expert discovery and preparing dispositive motions.

*See* Ex. CC (quoting Dkt. 265 at 6). Indeed, the issue was ripe for adjudication two months ago. *See* Dkt. 265 at 6. Plaintiffs' continuing failure to Comply with the Court's Order and further delays has only exacerbated the clear prejudice to Feit Electric. Enough is enough, and this issue should be resolved promptly.

## IV.   CONCLUSION

The scope of discovery should not be in flux months after the close of fact discovery. This is especially true here, where the Court has issued an order with clear directives that Plaintiffs should have been able to easily follow based on their own representations to Feit Electric and this Court. Plaintiffs' disregard of this Court's Orders and cavalier approach to the schedule of a case they brought are untenable here. For all of the reasons discussed herein, the Court should follow the reasoning of its August 22, 2024 Order and exclude both Exhibit 1 and the June Production in its entirety. Moreover, under the circumstances here, Plaintiffs' conduct merits awarding monetary sanctions as well.

1

DATED:  October 29, 2024

STRADLING YOCCA CARLSON & RAUTH LLP

2

3

By: _/s/ Salil Bali_____
Salil Bali

4

DATED:  October 29, 2024

BENESCH FRIEDLANDER COPLAN & ARONOFF LLP

5

6

By: _/s/ Kal K. Shah_____
Kal K. Shah

7

Ziyong Sean Li

Gregory C. Proctor

8

Simeon G. Papacostas

Hayk Snkhchyan

9

10

***Attorneys for Defendant***
***Feit Electric Company, Inc.***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28