UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:22-cv-5097-AB-SHK | Date: | March 14, 2025 |
|---|---|---|---|

| Title: | Seoul Semiconductor Co., Ltd., et al. v. Feit Electric Co., Inc. |
|---|---|

| Present: The Honorable | ANDRÉ BIROTTE JR., United States District Judge |
|---|---|

| Daniel Tamayo | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] Order Regarding Motion to Strike Untimely Fact Discovery and Declarations (Dkts. 288, 294 (sealed))**

## I. Introduction

On December 27, 2024, Defendant Feit Electric Co., Inc. filed a Motion to Strike Untimely Fact Discovery and Declarations served by Plaintiffs Seoul Semiconductor Co., Ltd. and Seoul Viosys Co., Ltd. in connection with expert disclosures. The motion is fully briefed. *See* Dkts. 288, 294 (sealed) ("Mot."); Dkt. 295 ("Opp."); Dkts. 298, 356 (sealed) ("Reply").

The Special Master conducted a conference with the parties about this motion on February 3, 2025. Following that conference, the Court vacated the February 7, 2025 hearing to allow time to gather follow-up information and for a second conference. Dkt. 321. The Special Master conducted a second conference with the parties on February 26, 2025. The Court deems this matter appropriate for decision without additional oral argument. The Court declines to set a further hearing. *See*

Fed. R. Civ. P. 78; L.R. 7-15. For the reasons stated in this Order, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion.

## II. Background

Defendant's motion relates to earlier motion practice resulting in the Court striking certain untimely produced materials concerning Plaintiffs' product testing of Defendant's accused products. *See* Dkts. 265, 285. The parties are familiar with the history of these disputes so the Court will not repeat it here. The Court incorporates those Orders by reference. In sum, Defendant sought discovery relating to Plaintiffs' product testing efforts on which Plaintiffs base their infringement allegations. Plaintiffs resisted producing some of that information until the eve of the close of fact discovery and, after Defendant moved to strike under Rule 37(c), much of it was held to be untimely produced. Defendant now challenges new product testing Plaintiffs conducted and introduced through expert discovery. Defendant argues that Plaintiff is taking an untimely second bite at the apple to introduce stricken material.

Specifically, Defendant states that, on the due date for opening expert reports, Plaintiffs served the expert report of Dr. David Emerson; seven tester declarations made by Plaintiffs' employees under Rule 26(a)(2)(C), who assisted Emerson with product testing[1]; and about 1,900 newly created documents on which Emerson relies. Mot. at 3. In his report, Emerson states that he was retained to purchase and analyze certain accused products. Dkt. 294-1 ¶ 17. Emerson summarizes how he purchased Feit Electric products and flew to South Korea to test them at SSC's facilities. *Id.* ¶¶ 102, 104. Emerson also sent two product samples to third-party testing facilities. *Id.* ¶¶ 128-29.

Defendant argues that Plaintiffs' disclosures violate Rule 26(e) because the new employee declarations are belated fact discovery disguised as expert declarations; therefore, Emerson improperly relies on new factual "information Plaintiffs developed and obtained well after the close of fact discovery." Mot. at 8; *see also id.* ("the acquisition of new sample products, details of what is within those products, testing of those products, what tests were performed, and the results of the testing is all the cultivation of factual evidence"). Defendant also argues that the

---

[1] Six of the seven employee declarations were provided by employees who previously provided declarations that were stricken as untimely. *See* Dkt. 265 at 10.

employee tester declarations are improper under Rule 26(a)(2) because they offer current opinions for the purposes of litigation rather than opinions based on the normal course of their work duties. *Id.* at 9-10. Defendant avers that all the belated material, including the 1,900 documents, should be stricken because "Plaintiffs seek a do-over of their infringement case by conducting new investigations, generating new testing results and attempting to bolster those results with new tester declarations that mirror the ones this Court already struck." *Id.* at 11.

Plaintiffs respond that Emerson properly opined on "the physical characteristics and design of Feit's accused products." Opp. at 1. Plaintiffs maintain that, to do so, Emerson properly directed and oversaw testing during expert discovery, enlisting the assistance of SSC personnel and an outside laboratory to conduct his requested testing. *Id.* Plaintiffs argue that the information derived from testing was not kept in the ordinary course of business and was directed by SSC's experts to develop their opinions for their reports, which keeps it outside the scope of fact discovery and non-discoverable until the experts relies on it. *Id.* at 1-2, 6.

Plaintiffs note Defendant does not allege that Emerson deviated from any theory alleged in Plaintiffs' infringement contentions or identified different infringing features. *Id.* at 7-8. Further, Plaintiffs explain that the employee tester declarations are proper percipient expert disclosures because those employees have "specialized knowledge" that will "help the jury understand the testing and procedures they employed in analyzing Feit's products at the direction of Dr. Emerson." *Id.* at 5. Plaintiffs contend that the employee declarations are offered by "employees who perform internal testing and analysis," and who performed the analysis as part of their work duties here, not experts specially employed to provide testimony in this case. *Id.* at 11-12.

Finally, Plaintiffs argue that the prior Orders striking certain material do not inform the analysis here because those orders related to spreadsheets, prior testing documents, and prior declarations that were untimely under the fact discovery cutoff. *Id.* at 13.

In Reply, Defendant notes that Plaintiffs' new employee declarations are nearly verbatim versions of the prior employee declarations stricken by the Court as untimely, not actual expert declarations. Reply at 1. Further, Defendant observes that the testing conducted by these employees was not part of their regular work duties but admittedly was done according to Emerson's instruction. *Id.* at 6-7.

### III. Legal Standards

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony. Under that rule, any party who wishes to present an expert witness at trial must disclose the identity of the expert. Fed. R. Civ. P. 26(a)(2)(A). The rule also governs which experts must provide a written report and which experts do not need to provide a written report. A written report is required "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).

If the witness falls outside of this requirement, rather than a written report, a disclosure that includes "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify" will suffice. Fed. R. Civ. P. 26(a)(2)(C).

"When a party fails to make the disclosures required by Rule 26(a), the party is not allowed to use the witness to supply evidence at trial unless it establishes that the failure was substantially justified or is harmless." *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (citing Fed. R. Civ. P. 37(c)(1)).

### IV. Analysis

The Court views Defendant's motion as raising two distinct issues, each of which the Court analyzes separately.

#### A. Employee Experts

Defendant seeks to have Plaintiffs' new employee declarations stricken for being improper "expert" declarations under Rule 26(a)(2), where they are untimely fact discovery that is functionally equivalent to what was stricken by the Court.

The Court finds the framework provided in *Masimo Corp. v. Apple Inc.*, No. SA CV 20-00048-JVS-JDEx, 2022 WL 18285029, at *3 (C.D. Cal. Nov. 22, 2022), instructive and adopts that analytical approach here. First, the Court must determine whether Plaintiffs' employee declarants are functioning as retained experts subject to Rule 26(a)(2)(B), or as non-retained experts subject to Rule 26(a)(2)(C). "The

Rule 26(a)(2)(B) written report and Rule 26(a)(2)(C) disclosure [requirements] share the goal of increasing efficiency and reducing unfair surprise." *Cantu v. United States*, No. CV 14-00219-MMM-JCGx, 2015 WL 12743881, at *3 (C.D. Cal. Apr. 6, 2015) (quotation marks omitted). "[C]ourts considering whether expert witnesses—including physicians—are 'non-retained' or 'retained' have found the nature of the expert's testimony particularly important: when an expert is to offer testimony limited to his or her percipient knowledge, *i.e.*, knowledge and opinions formed at the time an earlier evaluation or report was made, the expert is treated as a non-retained expert;" in contrast, where "the witness's testimony relies on information beyond his or her percipient knowledge, the witness is treated as a retained expert." *Id.* at *4.

A witness can be a "percipient expert" where "the witness's testimony is restricted to expert opinions rendered in the normal course of their work duties." *Copart, Inc. v. Sparta Consulting, Inc.*, No. 2:14-CV-00046-KJM-CKD, 2018 WL 1871414, at *20 (E.D. Cal. Apr. 19, 2018). Opinions of percipient experts are often referred to as "historical opinions," *i.e.*, what they already know from their job; percipient experts, however, may not offer "a current opinion for the purposes of litigation." *Id.*

A witness can be a "hybrid" percipient expert and retained expert. *Cantu*, 2015 WL 12743881 at *4. For example, a physician who treats a patient can speak to that treatment as a percipient witness, whereas the same physician who then reviews documents for the purposes of testifying regarding causation and forms additional opinions after treatment has concluded functions as a retained expert. *Id.* "[T]he critical distinction between retained and non-retained experts is the nature of the testimony the expert will provide, and whether it is based only on percipient knowledge or on information reviewed in anticipation for trial." *Id.* at *5; *see also In re Application of Republic of Ecuador*, 280 F.R.D. 506, 511 (N.D. Cal. 2012) (where expert reports are "prepared for trial and in anticipation of litigation," the witness is a retained expert). Thus, "a non-retained expert becomes a retained expert when his testimony exceeds his percipient knowledge." *Cantu*, 2015 WL 12743881 at *6.

The Court has reviewed the proposed employee declarations and finds that this is not a close question. The employees are seeking to testify as retained experts because their declarations offer current opinions that were not given in the normal course of their work duties but rather were done at the behest of Plaintiffs' expert in preparation for trial and in anticipation of the ongoing litigation. For example, the

Rule 26(a)(2)(C) Declaration and Disclosure of Yul Hee Kim does not offer a historical opinion arising from the normal course of his work duties. Rather, it states that, during October 2024, Kim performed analyses based on instructions reviewed and confirmed by Emerson. Dkt. 294-2 (Ex. C) ¶ 3. Kim provides a summary of test results and a copy of the instructions received by Emerson. *Id.* ¶ 4; *see also* Dkts. 294-3 – 294-8 (Exs. D-I) (remaining tester declarations offering similar summaries). Indeed, Plaintiffs confirm that the information relating to this testing was not kept in the ordinary course of business or made in connection with the employees' duties as it was created in October 2024, *i.e.*, specifically in connection with this case. Opp. at 1 ("The testing in question was not information kept by SSC in the ordinary course of business" and instead was "part of an examination of Feit's accused products" in this case).

Litigation-driven opinions offered after reviewing information supporting a case, which an employee would have not otherwise reviewed absent the litigation, trigger Rule 26(a)(2)(B)'s written report requirement. *See Goodman*, 644 F.3d 817 (written report requirement applies where percipient expert offers case-related opinions after "review[ing] information provided by [a case] attorney" and offers "additional opinions" based on that litigation-driven review). Because the SSC employees offer litigation-driven statements at the behest of Plaintiffs' retained expert, rather than percipient opinions arising from the normal course of their job duties, their statements must likewise be subject to the written report requirement of Rule 26(a)(2)(B). Because the employee witnesses did not prepare the required written expert reports, they have not complied with the rule and may not testify as experts.

This analysis is distinct from the issues considered in the Court's prior Order striking earlier employee declarations and the rulings stated here do not disturb anything in that Order. *See* Dkt. 265 at 10-12 (untimely fact-witness testing declarations prejudicial when produced after the close of fact discovery with no opportunity for rebuttal fact discovery).

Accordingly, the Court **GRANTS** the motion with respect to the employee declarations.

\\\
\\\

## B. Expert Testing

Excluding the declarations does not in and of itself require striking Emerson's challenged testing opinions and the bases for those opinions, however. Assuming Emerson is otherwise qualified to provide opinions concerning the physical characteristics, design, and functionality of Defendant's products, the Court is unaware of authority that would require those opinions to be supported by the tester declarations before the opinions could be admissible in the form of Emerson testifying at trial. Indeed, it is common practice for experts to rely on tests directed by the expert but conducted by subordinates, including those employed by the patentee. *See, e.g.*, *Monsanto Co. v. David*, 516 F.3d 1009, 1015-16 (Fed. Cir. 2008) (rejecting challenge to expert based on reliance on tests performed by Monsanto employees); *Cytiva Sweden AB v. Bio-Rad Laboratories, Inc.*, 2021 WL 9511424, *1 (D. Del. 2021) (expert's reliance on information provided by defendant's employee matter for cross-examination); *AU New Haven, LLC v. YKK Corporation*, 2019 WL 1254763, *15 (S.D. N.Y. 2019) (rejecting as "frivolous" challenge to expert's report where it was "based on tests conducted by [defendant's] employee without [the expert's] involvement"). In *Monsanto*, the Federal Circuit explained that "Rule 703 expressly authorizes the admission of expert opinion that is based on 'facts or data' that themselves are inadmissible, as long as the evidence relied upon is 'of a type reasonably relied upon by experts in the particular field in forming opinions.'" 516 F.3d at 1015-16 (quoting Fed. R. Evid. 703).

The question is whether Emerson was required to design and oversee the tests thereby generating new documents before the close of fact discovery, rather than only by the deadline to serve opening expert reports. One the one hand, some authority suggests that the purpose of hiring an expert is not to develop "facts." *See, e.g.*, *Finjan, LLC v. Qualys Inc.*, No. 18-CV-07229-YGR-TSH, 2020 WL 6581836, at *1 (N.D. Cal. Nov. 10, 2020) (declining to allow expert further access to opponent's source code after the close of fact discovery because "[t]he plain language of Rule 26 makes clear that expert discovery means discovery *of* the expert, not *by* the expert."); *Henry v. Quicken Loans Inc.*, No. 04-40346, 2008 WL 4735228, at *6 (E.D. Mich. Oct. 15, 2008) ("Defendants cannot use an expert to develop facts after the close of discovery when those same facts could have been developed by attorneys during fact discovery."). On the other hand, Rule 26 contemplates "the expert's testing of material involved in litigation," such as the accused products in this case. *See* Fed. R. Civ. P. 26, Advisory Committee Notes (2010 Amendment).

The Court has reviewed the cases cited by Defendant, which suggest experts should not be used to develop "facts" after the close of fact discovery and finds those cases distinguishable from this dispute. Those cases relate to facts derived from one of the parties to the litigation (*e.g.*, rejecting request for further inspection of opposing party's existing source code by expert (*Finjan*) or gathering additional fact witness statements about past events on which an expert would opine (*Henry*)); *see also Arkansas Game & Fish Comm'n v. United States*, 74 Fed. Cl. 426, 431 (2006) ("an entry upon the property of another party for testing and sampling manifestly constitutes fact discovery"); *D.R. v. Contra Costa Cnty. CA*, No. 19-CV-07-152-MMC-TSH, 2024 WL 589103, at *3 (N.D. Cal. Feb. 13, 2024) ("Seeking materials [such as tissue samples from deceased party] for the purpose of enabling an expert to conduct an analysis and write a report does not constitute expert discovery"). The throughline of these cases is that a party may not seek or develop fact discovery from the other party (or witnesses related to that party) after the close of fact discovery to provide the results of that discovery to an expert for analysis during expert discovery. If Emerson had sought information from Feit or one of its suppliers in furtherance of his product analysis, these cases could apply. But these cases do not stand for the proposition that an expert may not start and conclude his or her own proprietary testing during expert discovery as Emerson did here.

Although the Court will not allow Emerson's opinions to serve as a back door for newly developed fact witness statements (via the new tester declarations discussed above), the Court has not located (and neither party has cited) any authority concerning whether an expert who will test products in a litigation must begin and complete (or outsource) that testing before the close of fact discovery. Absent this authority, the Court will not read such a requirement into Rule 703.

Defendant states that it is not taking the position that experts cannot conduct testing during expert discovery, but rather given the circumstances, where Plaintiffs' testing was stricken as untimely under Rule 37(c), Plaintiffs should not be allowed to use an expert to backdoor in the same time of factual chain-of-custody type information that has already been excluded due to Plaintiffs' refusal to provide it in response to discovery requests.

Although the Court will not allow Emerson's testing to serve as a backdoor for allowing untimely material that was previously stricken, the opinions offered by Emerson fall within the purview of Rules 26(a)(2)(B) in connection with Rules 702/703 and were offered before the expert discovery cut-off and are therefore timely under the Court's scheduling order. Further, to the extent a Rule 37(c)

analysis is needed, the Court finds that Plaintiffs have demonstrated that producing Emerson's testing results and accompanying documents during expert discovery was substantially justified given work product protections that otherwise apply until an expert relies on data. Even if Emerson had completed his testing before the fact discovery cut-off, Plaintiffs would not have been entitled to review his opinions and the information on which he relied until Plaintiffs designated him as a testifying expert. *See, e.g.*, *Fast Memory Erase, LLC v. Spansion, Inc.*, No. 3-08-CV-0977-M, 2009 WL 4884091, at *2 (N.D. Tex. Dec. 16, 2009) (denying motion to compel expert testing reports during fact discovery, but noting those reports must be produced "[i]f and when plaintiff designates a testifying expert who has relied on the [testing facility's] reports and underlying data in forming opinions on disputed issues").

Plaintiffs did not retain Emerson until the expert discovery period opened, and use of an expert to oversee and analyze highly technical scientific tests in the context of an LED patent infringement case is typical and expected. The documents produced from the testing—on which Emerson relied to offer opinions concerning physical product characteristics in the context of the design and operation of LED devices—were not created until the pendency of expert discovery and thus could not have been produced earlier. Accordingly, Plaintiffs were justified in producing them under Rule 26(a)(2)(B) within the time for conducting expert discovery, which was shortly after they were created.[2] Because Plaintiffs served Emerson's report under the Court's scheduling order for opening expert disclosures, the Court finds that Plaintiffs have procedurally complied with the relevant expert due dates.

This ruling only addresses the timeliness of Emerson's opinions and accompanying document production as it relates to complying with Rule 26(a)(2)(B) in connection with Rule 702/703. It does not address whether Emerson may testify to the opinions provided therein, both as to products for which he oversaw testing and products that were tested earlier (*e.g.*, under *Daubert* or the Court's prior orders concerning representativeness), or whether any of the documents Emerson reviewed in support of writing his report may be otherwise inadmissible at trial (*e.g.*, if Emerson lacks proper foundation and personal knowledge). *See, e.g.*, *Nichia Corp. v. Feit Elec. Co., Inc.*, No. CV 20-359-GW-Ex, 2022 WL 18284882, at *2 (C.D. Cal. Dec. 29, 2022) (recognizing that testing reports and related exhibits may not be

---

[2] This ruling should not be construed as finding the documents timely produced for any other purpose other than as part of the required disclosures under Rule 26(a)(2)(B).

admissible if expert lacks personal knowledge or cannot lay proper foundation). It also does not address whether the document production is timely for any other purpose (it is not). Accordingly, the Court will deny this portion of the motion without prejudice to any proposed use of the documents for a non-Rule 26(a)(2)(B) purpose (*e.g.*, if Plaintiffs later propose treating the 1,900 documents like material produced in fact discovery, rather than only providing the bases for Emerson's opinions, the Court will entertain a further request to strike as to that use).

### C. Conclusion

For the reasons stated in this Order, the motion is **GRANTED-IN-PART** as to the tester declarations and **DENIED-IN-PART** without prejudice as to non-Rule 26(a)(2)(B) disclosures regarding the timing of Emerson's testing, opinions, and accompanying document production.

**IT IS SO ORDERED**.