1  David C. Radulescu, Ph.D. (*pro hac vice*)
   david@radip.com
2  Etai Lahav (*pro hac vice*)
3  etai@radip.com
   Jonathan Auerbach (*pro hac vice*)
4  jonathan@radip.com
5  Bryon Wasserman (Bar No. 215681)
   bryon@radip.com
6  Andrew S. Brown (*pro hac vice*)
7  andy@radip.com
   Michael Sadowitz (*pro hac vice*)
8  michael@radip.com
9  **RADULESCU LLP**
   5 Penn. Plaza, 19th Floor
10 New York, NY 10001
11 Telephone: (646) 502-5950
   Facsimile: (646) 502-5959
12
13 Kevin S. Kudlac (*pro hac vice*)
14 kevin@radip.com
   **RADULESCU LLP**
15 111 Congress Avenue, Ste. 500
   Austin, TX 78701
16 Telephone: (512) 656-5743
17

Guy Ruttenberg (Bar No. 207937)
guy@ruttenbergiplaw.com
**Ruttenberg IP Law**
1801 Century Park East, Ste. 1920
Los Angeles, CA 90067
Telephone: 310-627-2270
Fax: 310-627-2260

*Additional counsel at undersigned.*

*Attorneys for Plaintiffs*
*Seoul Semiconductor Co., Ltd. and*
*Seoul Viosys Co., Ltd.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Seoul Semiconductor Co., Ltd. a Korean corporation *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>Feit Electric Co., Inc.,<br><br>Defendant. | Case No. 2:22-cv-05097-AB-SHK<br><br>**PLAINTIFFS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. THE '210 PATENT AND THE "SPACER LAYER" TERM .........................2

III. LEGAL STANDARD........................................................................................3

IV. ARGUMENT.....................................................................................................4

V. CONCLUSION ..................................................................................................7

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Epistar Corp. v. Int'l Trade Comm'n*,
  566 F.3d 1321 (Fed. Cir. 2009) .......................................................................... 3

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .......................................................................... 5

*Thorner v. Sony Comput. Entm't Am. L.L.C.*,
  669 F.3d 1362 (Fed. Cir. 2012) ................................................................... 3, 4, 6

## I. INTRODUCTION

Pursuant to the Court's Order of March 17, 2025 (Dkt. 380), Plaintiffs Seoul Semiconductor Co., Ltd. and Seoul Viosys Co., Ltd. (collectively, "SSC") submit this supplemental claim construction brief addressing the term "spacer layer."[1]

Knowing that it had no viable infringement defense, for the first time in its expert non-infringement report, Feit argued that a "spacer layer" in the '210 Patent was a "spacer layer having a n-type dopant concentration higher than the n-type dopant concentration in the n-type contact layer." Feit's interpretation of "spacer layer," whether it is viewed as the plain and ordinary meaning, or whether it is converted into a construction, is incorrect.[2] As SSC demonstrated in its summary judgment briefing (Dkt. 363), Feit's interpretation is based on the impermissible tactic of importing limitations into the claim from embodiments in the specification and importing dependent claim limitations into the independent claim. Feit's approach was wrong during the claim construction process, and it is wrong now. The term "spacer layer" should be given its plain and ordinary meaning, and the Court should reject Feit's belated attempt to narrow the meaning of this term.

---

[1] SSC disagrees that the dispute regarding "spacer layer" could not have been raised earlier. Dkt. 380 at 2. Feit never proposed the current "construction" or plain and ordinary meaning until after receiving SSC's opening expert report on infringement. Its previous proposed construction for "spacer layer," submitted to the Special Master in April 2024, was entirely different. It was Feit's strategic choice to formulate a new meaning for "spacer layer" in the middle of expert discovery, and *O2 Micro* does not give a party *carte blanche* to introduce new claim construction arguments at any stage of the case to generate a dispute. Accordingly, Feit's belated attempt to raise a new dispute has clearly been waived, and Dr. Lebby's testimony should be excluded as an improper narrowing construction. Dkt. 362.

[2] For simplicity, SSC refers to Feit's interpretation of "spacer layer" as a "construction" herein. Recognizing that experts are not allowed to opine on claim construction to the jury, Feit repeatedly characterized Dr. Lebby's opinions as merely discussing what the plain and ordinary meaning of "spacer layer" is. Dkt. 334-1 at 4-7; Ex. 2 at 18:24-19:18. Given the construction Feit offers, this is nothing more than a thinly-veiled attempt at arguing claim construction to the jury.

PLAINTIFFS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF       1

## II. THE '210 PATENT AND THE "SPACER LAYER" TERM

The term "spacer layer" appears in independent claims 1 and 9 of the '210 Patent. These claims are directed to a light emitting diode. Claim 1 requires "a spacer layer including a plurality of layers disposed between the superlattice layer and the n-type contact layer and having a bandgap smaller than that of the barrier layer and greater than that of the quantum well layer." Dkt. 307-3 at 14:40-55. Claim 9 similarly requires "a spacer layer disposed over the n-type contact layer and including a stack structure including a first semiconductor layer and a second semiconductor layer. . . . wherein the first and second semiconductor layers of the spacer layer have respective Indium (In) composition ratios and the In composition ratio of the first semiconductor layer is lower than the In composition ration of the second semiconductor layer and wherein the spacer layer has a bandgap smaller than that of the barrier layer and greater than that of the quantum well layer." *Id.* at 15:44-16:9.

Claim 1 and 9 include positional requirements for the spacer layer. In claim 1, the spacer layer is "disposed between the superlattice layer and the n-type contact layer." *Id.* at 14:51-53. In claim 9, the spacer layer is disposed between the n-type contact layer and the active region. *Id.* at 15:46-51.

There are no requirements in these independent claims regarding the relative concentrations of n-type impurities in the spacer layer and the n-type contact layer.

Claim 1 (presented as claim 43 during prosecution) was originally drafted to include a requirement that "at least one of the plurality of layers in the spacer layer is doped with n-type impurities." Ex. 1 at SSC_FEIT_000002903. However, the claim was amended to remove that requirement. *Id.*

The specification describes several embodiments of the light emitting diode that include a spacer layer. It describes "[a]n exemplary embodiment of the present invention" that has a "spacer layer" that "is doped with n-type impurities, and the n-type impurity doping concentration is relatively higher than the impurity doping

PLAINTIFFS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF          2

concentration of the n-type contact layer." Dkt. 307-3, 4:11-14. Notably, this embodiment does not require that the spacer layer have the relative bandgap required by claims 1 and 9. *Id.*

The specification later describes another "exemplary embodiment of the present invention" with reference to Figures 6-8. *Id.*, 9:39-43. The exemplary light emitting diode of this embodiment includes a spacer layer 128. *Id.* Spacer layer 128 "may be made of a (Al, In, Ga) N-based group Ill-nitride semiconductor layer having a smaller bandgap than that of the barrier layer of the active region 129 and a larger bandgap than that of the well layer." *Id.*, 10:5-8. The specification also discloses that "the doping concentration in the area in which the n-type impurity is doped **may be relatively higher** than the impurity doping concentration of the n-type contact layer." *Id.*, 10:33-36 (emphasis added). The specification also discloses that in an alternative of the "present exemplary embodiment," "the n-type impurities are doped **at about the same doping concentration** of the n-type contact layer 126." *Id.*, 11:25-27 (emphasis added). Thus, the specification discloses embodiments where the spacer layer has a n-type dopant concentration both "relatively higher than" and "about the same" as the n-type dopant concentration in the n-type contact layer.

### III. LEGAL STANDARD

A claim may only be narrowed beyond its plain and ordinary meaning: "1) when a patentee sets out a definition and acts as [its] own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. L.L.C.*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

The standard for deviating from the plain and ordinary meaning is "exacting" and requires "a clear and unmistakable disclaimer." *Thorner*, 669 F.3d at 1366-67; *see also Epistar Corp. v. Int'l Trade Comm'n,* 566 F.3d 1321, 1334 (Fed. Cir. 2009) (requiring "expressions of manifest exclusion or restriction, representing a clear

disavowal of claim scope" to deviate from the ordinary meaning) (citation omitted). As the Federal Circuit has explained, "[w]e do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that." *Thorner*, 669 F.3d at 1366.

## IV. ARGUMENT

Feit and its expert argue that the meaning of "spacer layer" requires that the concentration of n-type dopants in the spacer layer must be higher than the concentration of n-type dopants in the n-type contact layer. *See* Dkt. 363-37 ¶¶ 35, 46. There is no basis for Feit's new construction in either the claim language or in the specification.

As discussed above, the spacer layers of claims 1 and 9 have explicit requirements set out in the claim language, including the relative bandgap of the spacer layer and the positioning of the spacer layer with respect to other layers within the claimed light emitting diode. This language delineates the scope of the "spacer layer," and it is not necessary to further construe the two-word phrase. The POSA need look no further than the claims themselves to understand the plain and ordinary meaning of "spacer layer"—a layer that introduces space between two other layers. In the case of claim 1, the spacer layer provides a space between the superlattice layer and the n-type contact layer; in the case of claim 9, it provides a space between the active region and the n-type contact layer.

Further, there is nothing in the claim language that mandates that the spacer layer have a specific relative concentration of n-type impurities. Instead, claim 5 (which depends from claim 1), and claim 13 (which depends from claim 9), add the additional requirement that Feit and Lebby seek to import into claim 1 and claim 9's "spacer layer," respectively. Claim 5 requires that "the n-type contact layer includes n-type impurities; and the at least one of the plurality of layers in the **spacer layer** that is doped with n-type impurities is doped with the n-type impurities at a **higher concentration** than a concentration of the n-type impurities in the n-type contact

layer." Dkt. 307-3, 14:66-15:5. Similarly, claim 13 further requires that "the **spacer layer** is doped with n-type impurities at **higher concentration** than a concentration of the n-type impurities in the n-type contact layer." *Id.*, 16:18-21.

Thus, Feit's new construction collapses the narrower claims 5 and 13 into the broader claims 1 and 9, which is improper. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*) ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."). Indeed, this Court already rejected Feit's tactic of importing a dependent claim limitation into the independent claim earlier in the case. Dkt. 274 at 22. During the *Markman* process, Feit sought to construe "hole injection layer" as requiring a specific dopant concentration. *Id.* at 20. In dismissing Feit's proposed construction, this Court found that "the doctrine of claim differentiation, which presumes that each claim has a different scope, undermines Feit's proposed construction regarding the proposed dopant concentration requirements. This is because, as SSC notes, dependent Claim 2 requires the dopant concentration proposed by Feit, distinguishing it from broader Claim 1." *Id.* at 22 (citing *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998). This is exactly what Feit and Lebby are attempting with their new "spacer layer" construction.

Critically, Lebby admitted he did not review or analyze claim 5 of the '210 Patent, which contains the very limitation he seeks to import into claim 1's spacer layer. Dkt. 323-3 at 118:16-17. Lebby's opinions with respect to "spacer layer," to the extent they are even relevant to the current dispute, are therefore legally flawed and should be disregarded.

Feit's new construction also has no basis in the specification. The only evidence Lebby cites for this construction is column 4, lines 10 to 13 and column 10, lines 13 to 16. *See, e.g.* Dkt. 363-37 ¶¶ 35, 46. But as the specification makes clear, these portions are merely "exemplary" embodiments, not definitions or

lexicographic statements. Dkt. 307-3, 4:4-13, 9:44-45. This Court similarly rejected Feit's prior attempts to import exemplary embodiments and examples from the specification into the claims. Dkt. 274 at 13-14, 16, 17, 24, 33, 45. Indeed, the specification discloses embodiments for the spacer layer having a n-type dopant concentration both "relatively higher than" and "about the same as" the n-type dopant concentration in the n-type contact layer. Dkt. 307-3, 4:11-14, 9:39-43, 10:5-8, 10:33-36, 11:25-27. Even if there were a reason to limit the "spacer layer" to a specific embodiment (there is not), there is no reason to limit it by choosing one embodiment over conflicting embodiments as Feit proposes.

During the March 12, 2025 conference with the Special Master, Feit's counsel raised yet another brand new, unbriefed argument that the discussion of the "spacer layer" within the exemplary embodiment in column 10 and the use of the word "is" was an invocation of lexicography by the patentee, and that therefore the term "spacer layer" necessarily encompasses a particular n-type impurity concentration. Ex. 2 at 8:14-9:22; Ex. 3 at slides 3-4.

There are three issues with this argument, however. First, Feit's counsel admitted that he was arguing for a plain and ordinary meaning of "spacer layer." Ex. 2 at 18:24-19:18. But as the Federal Circuit held, lexicography is only applicable when **departing** from the plain and ordinary meaning of a term. *Thorner*, 669 F.3d at 1365. Second, as discussed above, this portion of the specification that Feit relies upon is describing an exemplary **embodiment**, and uses permissive language to describe the n-type impurities in the spacer layer and in the n-type contact layer: "[T]he doping concentration in the area in which the n-type impurity is doped **may be relatively higher** than the impurity doping concentration of the n-type contact layer." Dkt. 307-3, 10:33-36 (emphasis added). Third, as discussed above, there are other embodiments covering other possibilities for the n-type dopant concentration in the spacer layer.

PLAINTIFFS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF            6

There is no basis to import embodiments from the specification into the claims, and Feit's repeated attempt to do so should again be rejected.

## V. CONCLUSION

SSC respectfully requests that the Court reject Feit's construction of "spacer layer" and give the term its plain and ordinary meaning.

Dated: March 24, 2025

By: /s/ Jonathan Auerbach
David C. Radulescu, Ph.D. (*pro hac vice*)
david@radip.com
Etai Lahav (*pro hac vice*)
etai@radip.com
Jonathan Auerbach (*pro hac vice*)
jonathan@radip.com
Bryon Wasserman (Bar No. 215681)
bryon@radip.com
Andrew S. Brown (*pro hac vice*)
andy@radip.com
Michael Sadowitz (*pro hac vice*)
michael@radip.com
**RADULESCU LLP**
5 Penn. Plaza, 19th Floor
New York, NY 10001
Telephone: (646) 502-5950
Facsimile: (646) 502-5959

Kevin S. Kudlac (*pro hac vice*)
kevin@radip.com
**RADULESCU LLP**
111 Congress Avenue, Ste. 500
Austin, TX 78701
Telephone: (512) 656-5743

Guy Ruttenberg (Bar No. 207937)
guy@ruttenbergiplaw.com
**Ruttenberg IP Law**
1801 Century Park East, Ste. 1920
Los Angeles, CA 90067
Telephone: 310-627-2270
Fax: 310-627-2260

Jennifer L Jonak (*pro hac vice*)
jenny@jonak.com
**Jonak Law Group PC**
1430 Willamette Street No 145
Eugene, OR 97401
Telephone: 541-525-9102
Fax: 510-291-2910

*Attorneys for Plaintiffs*
*Seoul Semiconductor Co., Ltd. and*
*Seoul Viosys Co., Ltd.*

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument was served or delivered electronically via the ECF filing System, to all counsel of record on this 24th day of March 2025.

*/s/ Jonathan Auerbach*
Jonathan Auerbach