SALIL BALI, State Bar No. 263001
  sbali@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: 949-725-4000

ZIYONG SEAN LI, State Bar No. 289696
  sli@beneschlaw.com
GREGORY CARL PROCTOR, State Bar No. 311214
  gproctor@beneschlaw.com
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111
Telephone: 628-600-2250

KAL K. SHAH (admitted *pro hac vice*)
  kshah@beneschlaw.com
SIMEON G. PAPACOSTAS (admitted *pro hac vice*)
  spapacostas@beneschlaw.com
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312-212-4949

Attorneys for Defendant, Feit Electric Co., Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SEOUL SEMICONDUCTOR CO., LTD., and SEOUL VIOSYS CO., LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>FEIT ELECTRIC CO., INC.,<br><br>Defendant. | CASE NO. 2:22-cv-05097-AB-SHK<br><br>Honorable Andre Birotte Jr.<br>Magistrate Shashi H. Kewalramani<br><br>**FEIT ELECTRIC'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**<br><br>*FAC Filed: December 21, 2022* |

1   Pursuant to the Court's March 17, 2025 Order (Dkt. 380), Defendant Feit
2   Electric Company, Inc. ("Feit Electric") provides this brief addressing the term
3   "spacer layer" found in independent claims 1, 6, and 9 of U.S. Patent No.
4   9,716,210 (Ex. A[1], the "'210 Patent").

## I. "SPACER LAYER" BACKGROUND

### A. THE PRIOR ART

The '210 Patent relates to techniques of layering semiconductors—complex technology that has been improved upon for decades. Light Emitting Diodes ("LEDs") conventionally are made of layers grown epitaxially through a crystal growth process. Layering generally allows for changes in material composition (*e.g.*, doping concentrations of different elements like Silicon, Indium, Aluminum, Gallium, and Nitride) to obtain different electrical characteristics. For example, as depicted below, a conventional LED is grown using Indium Gallium Nitride ("InGaN") with an n-type layer ("n-GaN") and a p-type layer ("p-GaN"):



*See* Ex. B. N-type doped GaN has the characteristic of free electrons and p-type doped GaN has the characteristic of free holes. When combined in the active region between these two layers, the combination of holes and electrons produce light. *Id*. Additional layers can be epitaxially grown in the LED to improve or change performance characteristics. The types of layers typically employed include, for example, buffer layers, spacer layers, and current blocking layers. In

---

[1] Exhibits A - M are attached to the Declaration of Gregory C. Proctor.

FEIT ELECTRIC'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

this context, a spacer layer can be added to improve carrier (hole and electron) management and enhance overall efficiency.

In general, spacer layers are meant to improve overall luminous efficacy by attempting to solve the efficiency droop phenomenon. *See* Ex. C (Declaration of Michael S. Lebby), ¶ 16. As discussed in the prior art cited on the face of the '210 Patent, spacer layers designed to combat efficiency droop can consist of "preferably…undoped GaN" in an effort to "provide[] more consistent device performance and better uniformity." Ex. D ("*Bergman*") at [0047]; *see also* Ex. M at 10:21-23 ("*Emerson*") (disclosing "forming a Group III nitride based spacer layer" which "may be undoped GaN"); Ex. C, ¶ 16. Other prior art spacer layers have included an "n-type layer doped with Si" to "help current to uniformly spread in the active region and can prevent the current from concentrating at a shorted path between an n contact and a p contact." Ex. E ("*Biwa*") at [0017]-[0018].

### B. The '210 Patent

Claim 1 of the '210 patent recites: "A light emitting diode comprising: an n-type contact layer, a p-type contact layer disposed over the n-type contact layer; an active region disposed between the n-type contact layer and the p-type contact layer and comprising a multi quantum well structure including a quantum well layer that includes a composition ratio of Indium (In) and a barrier layer; a Superlattice layer including a plurality of layers, disposed near the active region; and *a spacer layer including a plurality of layers disposed between the superlattice layer and the n-type contact layer and having a bandgap smaller than that of the barrier layer and greater than that of the quantum well layer*."[2] According to the '210 Patent, the claimed spacer layer allegedly "improve[s] electrostatic discharge characteristics and/or luminous efficiency." Ex. A at 1:26-28. In other words, the '210 Patent attempts to minimize the efficiency droop problem by doping the

---

[2] All emphases added unless otherwise noted.

spacer layers in specific concentrations relative to that of the contact layer, such that "a resistance increase of the spacer layer 128 can be prevented and the electron injection efficiency into the active region 129 can be increased due to electrons generated in the spacer layer." *Id*. at 2:36-57 and 10:36-40.  As it relates to the claimed spacer layer in the '210 Patent:

> The spacer layer 128 *is* doped with an u-type [sic] impurity at high concentration to lower the forward voltage Vf of the light emitting diode. As shown in FG. 7 the doping concentration of the n-type impurity doped on the spacer layer 128 *is* higher than the n-type impurity doping concentration of the n-type contact layer 126.

'210 Patent at 10:11-16.[3] Feit Electric's definition accounts for this disclosure.

### C.    PLAINTIFFS' PRIOR ADMISSIONS ON "SPACER LAYER"

The present dispute is not the first time the scope of the claimed spacer layer of the '210 Patent has been addressed. On March 22, 2019, Plaintiffs proposed to construe "spacer layer" as "plain and ordinary meaning, or in the alternative, 'a layer of semiconductor material in the space that separates the superlattice layer and n-type contact layer and that has a bandgap smaller than the barrier layer and greater than the quantum well layer.'" Ex. F at 19. Shortly thereafter, the validity of the patent was challenged via a request for *inter partes* review ("IPR"). Ex. G-H. During those proceedings, to save the patent from invalidity, Plaintiffs acknowledged that spacer layer as used in the '210 patent is necessarily narrow. Specifically, Plaintiffs argued:

> [T]he proper construction of 'a spacer layer' having 'a bandgap smaller than that of the barrier layer and greater than that of the quantum well layer" requires that each layer within a multilayer spacer layer have a bandgap between that of the barrier layer and that of the quantum well

---

[3] The reference to a "u-type" impurity is a typographical error. *See* Ex. C, ¶ 20, n.4.

layer. This construction is consistent with the specification of the '210 Patent, which teaches a spacer layer comprised of alternating layers that both have bandgaps between that of the barrier layer and that of the quantum well layer.

Ex. G at 3. This, of course, demonstrates Plaintiffs' understanding that construction of the term must take into account the prior art and specification.

The Board accepted Plaintiffs' narrowed approach. *See* Ex. H at 12. Specifically, the Board found that "for a spacer layer having a plurality of layers, ***each layer*** of the spacer layer has a bandgap that is smaller than the bandgap of the barrier layer." *Id*. The Board did not address the issue now before this Court. Plaintiffs' request for plain and ordinary meaning here, however, is belied by their prior representations. Indeed, Plaintiffs argued for a narrow construction on three additional occasions. *See, e.g.*, Ex. I at 23-25; Ex. J at 13-15; Ex. K at 22; Ex. L at 4. Plaintiffs even supported this narrowed construction with expert testimony. *See* Ex. I at 24 (Relying on expert testimony to argue that "A POSA would therefore understand that the sublayers of the spacer layer must have bandgap that meets the claim limitation: each sublayer's bandgap must be smaller than the bandgap of the barrier layer and greater than that of the quantum well layer.").

## II. CONSTRUCTION OF THE "SPACER LAYER" LIMITATION

Considering the prior art and intrinsic evidence, including Plaintiffs' admissions during post-grant proceedings, Feit Electric believes "spacer layer" should be interpreted to mean "a layer containing n-type dopants at a concentration higher than in the n-type contact layer." In context, as used in claim one as highlighted above this means: "a layer containing sublayers disposed between the superlattice layer, wherein each sublayer contains n-type dopants at a concentration higher than in the n-type contact layer, and where the bandgap of each individual sublayer of the spacer layer has a bandgap that is smaller than the bandgap of the barrier layer and greater than the bandgap of the quantum well

-4-
FEIT ELECTRIC'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

layer." Ex. C, ¶¶ 17-26. This construction avoids treading on the prior art discussed above, gives meaning to the patentee's distinctions, and is consistent with Plaintiffs' own disclaimers and admissions.

The starting point is the intrinsic evidence. To that end, "the specification is 'the single best guide to the meaning of a disputed term,' and that the specification 'acts as a dictionary when it expressly defines terms used in the claims.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005). The specification is unequivocal: "[t]he spacer layer 128 *is* doped with an u-type [sic] impurity at high concentration to lower the forward voltage Vf of the light emitting diode. As shown in FG. 7 the doping concentration of the n-type impurity doped on the spacer layer 128 *is* higher than the n-type impurity doping concentration of the n-type contact layer 126." Ex. A at 10:11-16.

The specific use of "is" as opposed to "may" should be recognized in construing this term. *See Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007). In fact, the specification consistently reinforces that the patentee "clearly express[ed] [an] intent in the written description" to define the claimed spacer layer. *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005); *see also 3M Innovative Properties Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003). The specification discusses many aspects of the invention as "may," but the spacer layer in contrast is repeatedly and only described using "is." *See, e.g.*, Ex. A at 4:10-13 ("the spacer layer *is* doped with n-type impurities, and the n-type impurity doping concentration *is* relatively higher than the impurity doping concentration of the n-type contact layer"), 10:62-64 ("at least one layer 128a or 128b adjacent to the active region 129 in the spacer layers 128 *is* doped with n-type impurities."); *see also id.* at 11:1-11 ("the doping concentration of the InGaN layer 128a doped with the n-type impurities may be, for 5 example, $9 \times 10^{19}$ cm$^{-3}$, which *is* relatively higher than the impurity doping concentration of the n-type contact layer 126."); *compare*

-5-

*with id.* at 10:5-10 ("The spacer layer 128 **_may_** be made of a (Al, In, Ga) N-based group III-nitride semiconductor layer…"), 10:17-19 ("The In composition ratio of the spacer layer 128 **_may_** be smaller than the In composition ratio within the InGaN quantum well layer."), 10:19-22 ("the spacer layer 128 **_may_** confine charges in the active region 128 quantum well layer…."), 10:45-48 ("the spacer layer 128 may be made by alternately stacking $In_xGa_{1-x}N$ ($0 \leqq x < 1$) 128 a and $In_yGa_{1-y}N$ ($0 \leqq y < 1$) 128 by having different compositions.").

Plaintiffs seek to avoid this intrinsic evidence citing a singular statement in the specification that "[i]n the present exemplary embodiment, the n-type impurities are doped at about the same doping concentration of the n-type contact layer 126" (Ex. A at 11:19-29). This, however, is insufficient to override the numerous clear statements regarding spacer layer. *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1138 (Fed. Cir. 2007) ("vague language cannot override the express definitional language"). *First*, "relatively higher than" and "about the same" are not necessarily contradictory. The n-type doping concentration of the spacer layer can be both "higher than" and "about the same" as the doping concentration of the n-type contact layer. Thus, this does not provide any contrary definition or support for a broader application. *Second*, this patent is directed to both "light emitting diodes and method of fabricating the same" *See* Ex. A. The sentence preceding the sentence cited by Plaintiffs describes the concentrations "at this time," a clear reference to a step in the fabrication process, not a characteristic of the finished product.

Further, it would strain credulity for Plaintiffs to argue that this "exemplary embodiment" or specification statements containing "may" override the specification's express definition. In arguing for their narrowed construction in a parallel proceeding asserting these claims in *SSC v. Finelite*, Plaintiffs repeatedly relied on "may" statements from the specification to argue in support of their proposed narrow construction and repeatedly argued that adopting their narrow

proposed construction did not exclude embodiments even though they relied on specific embodiments and "may" statements. *See* Ex. I at 23-25; Ex. J at 13-15.

Plaintiffs have also suggested that claim differentiation warrants a broad construction. *See* Dkt. 362 at 5-6. But "[c]laim differentiation is not conclusive; it is a guide, not a rigid rule." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1323 (Fed. Cir. 2016) (internal citations omitted) ("Although it is a useful tool, claim differentiation does not require that the 'dependent claim tail ... wag the independent claim dog' in this case."). That guidance cannot prevail where, absent construction consistent with Feit Electric's proposal and Plaintiffs' prior constructions, the claims here cannot stand. As explained above, the prior art is replete with examples of other structures and concentrations for the spacer layer. For instance, an undoped GaN-based spacer layer is disclosed in *Bergmann*, cited on the face of the '210 Patent. Ex. D at [0047]; Ex. C, ¶ 25. Similarly, *Biwa* discloses a spacer layer consisting of "an n-type layer doped with Si at a concentration, for example in the range of 0 to $2 \times 10^{18}/cm^3$." Ex. E at [0017]-[0018]. *Emerson* also discloses "forming a Group III nitride based spacer layer" which "may be undoped GaN." Ex. M at 10:21-23; Ex. C, ¶ 25. Without further definition by this Court, the claims of the '210 Patent would be invalid based on this art or, conversely, this art would be removed from the public domain.

Accordingly, "spacer layer" means "a layer containing n-type dopants at a concentration higher than in the n-type contact layer." And spacer layer having "a bandgap smaller than that of the barrier layer and greater than that of the quantum well layer," should be construed to mean "a layer containing sublayers, wherein each sublayer contains n-type dopants at a concentration higher than in the n-type contact layer, and where the bandgap of each individual sublayer of the spacer layer has a bandgap that is smaller than the bandgap of the barrier layer and greater than the bandgap of the quantum well layer."

| | | |
|---|---|---|
| DATED: March 24, 2025 | | STRADLING YOCCA CARLSON & RAUTH LLP |
| | By: | /s/ Salil Bali |
| | | Salil Bali |
| DATED: March 24, 2025 | | BENESCH FRIEDLANDER COPLAN & ARONOFF LLP |
| | By: | /s/ Kal K. Shah |
| | | Kal K. Shah |
| | | Ziyong Sean Li |
| | | Gregory C. Proctor |
| | | Simeon G. Papacostas |
| | | Hayk Snkhchyan |

***Attorneys for Defendant***
***Feit Electric Company, Inc.***